IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARBARA JOHNSON :
:
    Plaintiff : CIVIL ACTION
:
  vs. :
: NO. 17-CV-4490
BB & T CORPORATION, formerly :
known as SUSQUEHANNA BANK/ :
BB & T, INC. :
:
    Defendant :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                 **March 29, 2018**

      This civil action, which was previously dismissed and reinstated twice is before the Court yet again on motion of the Defendant, BB & T Corporation to dismiss the Plaintiff's First Amended Complaint[1]. For the reasons set forth below, the motion

---

[1] As we very recently discussed in our Memorandum Opinion granting Plaintiff's Motion to Reconsider our Order of February 14, 2018 granting this Motion to Dismiss First Amended Complaint as uncontested, this matter was originally filed in the Court of Common Pleas of Chester County and removed to this Court by BB & T on October 10, 2017. On October 18, 2017, BB & T filed a motion to dismiss the Plaintiff's original complaint which this Court granted as uncontested pursuant to Local Rule of Civil Procedure 7.1(c) on November 14, 2017. Inasmuch as Plaintiff contended that her counsel did not receive the electronic notice of the filing of that motion and did not receive ECF access until November 8, 2017, the parties stipulated to the vacatur of the order of dismissal on November 20, 2017 and the case was reinstated. Plaintiff then filed a motion seeking leave to file an amended complaint, which was granted on December 19, 2017. Plaintiff then filed the First Amended Complaint at issue here on December 26, 2017 to which Defendant again responded by filing a motion to dismiss on January 9, 2018. Because Plaintiff again failed to respond within fourteen days in accordance with Local Rule of Civil Procedure 7.1(c), this Court again granted the motion as uncontested on February 14, 2018. Plaintiff then moved, on February 26, 2018, for reconsideration of this second order of dismissal. For the reasons articulated in our companion Memorandum and Order, we granted Plaintiff's motion and vacated the second order of dismissal with directions to Plaintiff's counsel to reimburse Defendant for the attorneys' fees and any

shall be granted, albeit without prejudice.

## History of the Case

As alleged in the Plaintiff's First Amended Complaint, in January 2015, she and her now-late husband, Richard A. Johnson, Sr. opened a checking account at a Susquehanna Bank[2] branch office in Kennett Square, Pennsylvania.  Plaintiff alleges that at some unspecified time and without her knowledge or consent, the Defendant Bank "negligently allowed" her step-son, Richard A. Johnson, Jr. to be added to the signature card on the account and to change the mailing address for the bank statements on the account to his home address.  Thereafter, the Defendant Bank purportedly accepted and deposited some $509,110 in forged check deposits from Johnson, Jr., which checks were made out either to Plaintiff individually or to Plaintiff and her husband, Johnson, Sr., only[3].  The Amended Complaint goes on to aver that subsequently, Johnson, Jr. was permitted to withdraw those monies

---

attendant expenses which it incurred in having to respond.  We now consider the merits of Defendant's motion to dismiss the First Amended Complaint for the first time.

[2]  Susquehanna Bank merged with and into BB & T Bank sometime in the latter part of 2015.

[3]  The First Amended Complaint references the Findings of Fact made by the Hon. Mark Tunnell of the Chester County Orphans Court in an action arising out of the Estate of Mr. Johnson, Sr., which reflect that the $509,110 in checks were issued by two insurance companies in settlement of claims arising out of fire damage suffered by two adjacent Kennett Square properties owned by Plaintiff herself and by Plaintiff and her late husband.  In his decision, Judge Tunnell further found that these properties originally belonged exclusively to Plaintiff, as she inherited them or bought them herself prior to her marriage.  Judge Tunnell further found that Richard A. Johnson, Jr. had converted an unknown amount of checks representing insurance proceeds.  (FAC, ¶s 5-13).

himself, thereby converting them to his own use.

The First Amended Complaint contains four counts: the first three sound in negligence and the fourth in breach of contract. Defendant's Motion to Dismiss seeks dismissal of the First Amended Complaint on the grounds that the first three counts are barred by the gist of the action and/or economic loss doctrines and by the Uniform Commercial Code and because the fourth count fails to sufficiently allege breach of contract.

## **Standards Governing Fed. R. Civ. P. 12(b)(6) Motions**

It is well settled that in considering motions to dismiss under Fed. R. Civ. P. 12(b)(6), the district courts must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. Great Western Mining & Mineral Co. v. Fox, Rothschild, LLP, 615 F.3d 159, 161 n.1 (3d Cir. 2010); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002); Hamilton v. Allen, 396 F. Supp.2d 545, 548-549 (E.D. Pa. 2005).  In so doing, the courts must consider whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).  "It is therefore no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed

conduct." Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008)(quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

## Discussion

*A. Motion to Dismiss Plaintiff's Negligence Claims:
Gist of the Action/Economic Loss Doctrines*

Defendant first moves to dismiss the first three counts of the First Amended Complaint which aver that Defendant was negligent in allowing an unauthorized name to be added to the account's signature card, for allowing an unauthorized change of address for the mailing of monthly bank statements and for permitting the forged endorsements of check deposits. In so moving, Defendant relies upon the so-called "gist of the action" and/or "economic loss" doctrines.

Generally speaking, the gist of the action doctrine bars a tort action "when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort is, in actuality, a claim against the party for breach of its contractual obligations." Weinar v. Lex, 2017 PA Super. 398, 176

4

A.3d 907 at *42 (Pa. Super. 2017).[4]  Stated otherwise, "[t]he gist of the action doctrine prohibits a plaintiff from re-casting ordinary breach of contract claims into tort claims." B.G. Balmer & Co. v. Frank Crystal & Co., 2016 PA Super 202, 2016 Pa. Super. LEXIS 516 at *31 (Pa. Super. Sept. 9, 2016)(citing Empire Trucking Co., Inc. v. Reading Anthracite Coal Co., 2013 PA Super 148, 71 A.3d 923, 931, n.2 (Pa. Super. 2013)).  More particularly, the gist of the action doctrine acts to foreclose tort claims:

> "... 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; or 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.  The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of breaches of duties imposed by mutual consensus agreements between particular individuals, while the latter arises out of **breaches of duties imposed by law as a matter of social policy**."

Id.(quoting Reardon v. Allegheny College, 2007 PA Super 160, 926 A.2d 477, 486-87 (Pa. Super. 2007)(emphasis in original)).

Thus, the mere labeling by the plaintiff of a claim as being in tort is not controlling.  Downs v. Andrews, 639 Fed. Appx. 816, 819 (3d Cir. Feb. 10, 2016).  As the Pennsylvania Supreme Court stated, the "critical determinative factor in determining

---

[4]  As noted by the Pennsylvania Supreme Court in Bruno v. Erie Ins. Co., infra, at notes 4 and 5: "The term gist has traditionally been understood to mean 'the ground or essence of a legal action,'" and "[g]ravamen is defined as 'the substantial point or essence of a claim, grievance or complaint.'"(citing Black's Law Dictionary 711, 721 (8th ed. 2009)).

5

whether [a] claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint." Bruno v. Erie Insurance Co., 630 Pa. 79, 106 A.3d 48, 53 (Pa. Super. 2014). Accordingly, in determining whether an action is barred by the gist of the action doctrine, it is incumbent upon the court to examine the factual allegations and ask "what's this case really about?" Downs, supra,(quoting Pediatrix Screening, Inc. v. TeleChem International, Inc., 602 F.3d 541, 550 (3d Cir. 2010)).

However, Pennsylvania courts have also cautioned against prematurely dismissing a tort action on the basis of the gist of the action doctrine because its rules permit the pleading of tort and contract claims in the alternative. Weinar, supra, at *42(citing Telwell, Inc. v. Grandbridge Real Estate Capital, LLC, 2016 PA Super 159, 143 A.3d 421, 429 (Pa. Super. 2016) and Pa. R. C. P. 1020©). To be sure, "the mere existence of a contract between two parties does not *ipso facto,* classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract," ... [i]ndeed, ... a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party." Scampone v. Grane Healthcare Co., 169 A.3d

6

600, 618 (Pa. Super. 2017)(quoting Bruno, 106 A.3d at 69).

The economic loss doctrine is somewhat similar. It provides, in essence that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Adams v. Copper Beach Townhome Communities, 2003 PA Super 30, 816 A.2d 301, 305 (Pa. Super. 2003); Spivack v. Berks Ridge Corp., 402 Pa. Super. 73, 586 A.2d 402, 405 (Pa. Super. 1990). In this manner, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows from a contract." Hospicomm, Inc. v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 582 (E.D. Pa. 2004)(quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995) and Factory Market, Inc. v. Schuller Int'l, Inc., 987 F. Supp. 387, 395 (E.D. Pa. 1998). It has been said that the purpose of the economic loss doctrine is "to prevent claims based in tort that only allege economic losses from proceeding, in part, because those losses can be compensated through contract remedies." Ferki v. Wells Fargo Bank, Civ. A. No. 10-2756, 2010 U.S. Dist. LEXIS 134328 at *24, 2010 WL 5174406 (E.D. Pa. Dec. 20, 2010)(quoting DeFebo v. Andersen Windows, Inc., Civ. A. No. 09-2993, 2009 U.S. Dist. LEXIS 87889, 2009 WL 315-390 at *9 (E.D. Pa. Sept. 24, 2009)).

What's more, in Pennsylvania, "[i]t is well established that

the legal relationship between a financial institution and its depositors is based on contract, and that the contract terms are contained in the signature cards and deposit agreements." First Federal Savings & Loan Ass'n. v. Office of the State Treasurer, 543 Pa. 80, 669 A.2d 914, 915 (1995); McGuire v. Shubert, 1998 Pa. Super. LEXIS 4647, 722 A.2d 1087, 1091 (Pa. Super. 1998). "Parties to such agreements cannot avoid the terms by stating their claims in tort, rather than in contract." Baylis v. Wachovia Bank, N.A., Civ. A. No. 08-3392, 2008 U.S. Dist. LEXIS 96465 at *5 (E.D. Pa. Nov. 25, 2008).

In applying these legal principles to this case, we note at the outset that in Counts I, II and III of the First Amended Complaint ("FAC"), Plaintiff avers that "a critical aspect of the prescribed procedure prevailing in the area in which the Susquehanna Bank/BB & T operates" is "to require a signature card for each account holder," "for proper endorsements," and "to establish a prescribed procedure for changing the mailing address of the account holder which allows account holders to receive monthly bank statements." (FAC, ¶s 16, 22, 36). The FAC goes on to allege that "[w]ithout Plaintiff's knowledge or consent Susquehanna Bank/BB & T negligently allowed Richard A. Johnson, Jr. to be placed on/added to said signature card," "negligently allowed Richard A. Johnson, Jr. to change the address for mailing monthly checking account bank statements to his home address,"

and "negligently allowed Richard A. Johnson, Jr. to deposit unauthorized forged endorsements of insurance proceeds checks totaling $509,110.03." (FAC, ¶s 17, 18, 19, 23, 24, 37).

In so doing, Plaintiff further contends that "Defendant's negligence in handling the signature card," "in allowing Richard A. Johnson, Jr. to change the address for mailing monthly bank statements," and "by accepting and depositing unauthorized forged endorsements of insurance proceeds checks..." "was clearly conduct outside any contractual agreement signed by Plaintiff at any time that she was a customer of Susquehanna/BB & T's," and "the bank's prescribed procedures." (FAC, ¶s 24, 27, 29, 32, 39, 40, 44).

We find that on their face, the true essence of these allegations is not a breach of any legal duty imposed as a matter of social policy, but rather, that Plaintiff's claims here instead arise out of the banking relationship which she entered into with Defendant pursuant to the contract that was made at the time that she and her late husband opened the account. Indeed, it is that account agreement - pursuant to which the signature card was signed and regular statements were to be mailed- which forms the "gist" of the action here. To the extent that Defendant bank was negligent in its oversight of the account, it effectively breached the account agreement between it and Plaintiff. We therefore must reject the Plaintiff's efforts to

"re-cast" what is at its core a cause of action for breach of contract into three additional claims against Defendant in tort. And, given that nowhere in the First Amended Complaint does Plaintiff allege any physical injury or property damage whatsoever, we conclude that Counts I - III are barred by both the gist of the action and the economic loss doctrines. Accordingly, we shall dismiss Counts I - III with prejudice.

*B. Motion to Dismiss Count IV - Breach of Contract*

Defendant also moves for the dismissal of Count IV of the First Amended Complaint which seeks to assert a cause of action for breach of contract. Specifically, Defendant contends that the Plaintiff fails to sufficiently allege the terms of the contract which were purportedly breached. We agree.

Pennsylvania law is clear that to allege breach of contract, "a plaintiff must show '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" <u>Kaymark v. Bank of America, N.A.</u>, 783 F.3d 168, 182 (3d Cir. 2015)(quoting <u>Omicron Systems, Inc. v. Weiner</u>, 2004 PA Super 389, 860 A.2d 554, 564 (Pa. Super. 2004); <u>Ware v. Rodale Press, Inc.</u>, 322 F.3d 218 (3d Cir. 2003).

Here, Plaintiff alleges only that "[u]pon opening the account Plaintiff and her husband entered into a contract with Defendant where Plaintiff would place her funds in Defendant's

bank and Defendant would protect those funds from being fraudulently and/or negligently depleted through no fault or actions by the Plaintiff." (FAC, ¶ 51). And, according to Plaintiff, "Defendant breached the contract in the within matter by allowing Richard A. Johnson, Jr.: (a) to be placed on or added to the signature card without Plaintiff's consent or knowledge, (b) to change the address for mailing monthly checking account bank statements thereby preventing Plaintiff from receiving monthly bank account statements, (c) to deposit unauthorized forged endorsements of insurance proceeds checks totaling $509,110.03, and (d) to withdraw insurance proceeds checks totaling $509,110.02 without alerting Plaintiff of unusual withdrawal activity." (FAC, ¶52).

We find these allegations to be lacking in the required specificity. Although the complaint references the account agreement which she and her husband entered into with the bank, Plaintiff fails to identify what the terms of that agreement were, which provisions were breached or how they were breached by the actions of Johnson, Jr. As a consequence, this Count too is properly dismissed. However, it does seem quite plausible to this Court that Plaintiff could very well allege with the required amount of detail the terms of this agreement and the provisions and manner of a breach. For this reason, we shall dismiss Count IV without prejudice and with leave to Plaintiff to

11

re-plead.

    An order follows.