## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>BRANCH BANKING AND TRUST COMPANY, SUCCESSOR BY MERGER TO SUSQUEHANNA BANK,<br><br>Defendant/Third-Party Plaintiff,<br><br>v. | CIVIL ACTION NO.: 2:17-CV-04490-JCJ |
| RICHARD A. JOHNSON, JR. and VIRGINIA THOMAS<br><br>Third-Party Defendants. | |

## DEFENDANT/THIRD PARTY PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

BARLEY SNYDER LLP

Robert J. Tribeck, Esq. PA I.D. No. 74486
Justin A. Tomevi, Esq. PA I.D. No. 313661
213 Market Street, 12th Floor
Harrisburg, PA 17101
rtribeck@barley.com
jtomevi@barley.com
*Attorneys for Defendant/Third Party Plaintiff*

# **TABLE OF CONTENTS**

I.     **INTRODUCTION** ..................................................................................1

II.    **STATEMENT OF FACTS** .........................................................2

III.   **QUESTIONS PRESENTED** ....................................................6

     A.    **WHETHER PLAINTIFF'S CLAIMS ARE BARRED BECAUSE SHE FAILED TO NOTIFY THE BANK OF ANY UNAUTHORIZED WITHDRAWALS WITHIN 60 DAYS OF THEIR OCCURRENCE?** ..........................6

     B.    **WHETHER PLAINTIFF'S CLAIMS ARE BARRED BECAUSE SHE DID NOT NOTIFY THE BANK OF ALLEGED UNAUTHORIZED WITHDRAWALS WITHIN ONE YEAR OF THEIR OCCURRENCE?** ....................6

     C.    **WHETHER PLAINTIFF'S CLAIMS ARE BARRED BECAUSE FACTS ESSENTIAL TO HER CLAIMS HAVE BEEN DETERMINED AGAINST HER IN A PRIOR ADJUDICATION?** ................................................7

     D.    **WHETHER PLAINTIFF HAS INSUFFICIENT EVIDENCE TO SUPPORT HER CLAIM FOR BREACH OF CONTRACT?** .........................................7

     E.    **WHETHER PLAINTIFF IS PRECLUDED FROM RELYING ON BANK POLICY DOCUMENTS, AS THESE DO NOT ESTABLISH AN INDEPENDENT DUTY OWED TO PLAINTIFF?** .........................................7

IV.   **ARGUMENT** ..............................................................................7

     A.    **Plaintiff failed to notify the Bank of any unauthorized withdrawals within 60 days of their occurrence, so claims for any withdrawals prior to February 6, 2017 are barred by the terms of the contract.** ..........................10

     B.    **Plaintiff failed to notify the Bank of any unauthorized withdrawals within one year of their occurrence, so claims for any withdrawals prior to April 6, 2016 are barred by the Uniform Commercial Code.** ....................14

**C.**     **Plaintiff's claim is barred because facts essential to her action have previously been determined against her, and she is collaterally estopped from relitigating these facts.** ...........................................................**17**

**D.**     **Plaintiff has insufficient evidence to support a claim for breach of contract.** .......................................................**19**

**E.**     **Plaintiff may not rely on alleged violations of internal bank policy, as bank policies do not give rise to an independent duty owed to Plaintiff.** ...................................**22**

**V.**     **CONCLUSION** ...........................................................**25**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................8

*Bernstein v. Commonwealth*,
    617 A.2d 55 (Pa. Cmwlth. 1992)........................................................23

*Big Apple BMW, Inc., v. BMW of North America, Inc.*,
    974 F.2d 1358 (3d Cir. 1992) ...............................................................8

*Binns v. BB & T Bank*,
    377 F. Supp. 3d 487 (E.D. Pa. 2019), *aff'd sub nom. Binns v. Truist
    Bank*, No. 19-2157, 2020 WL 1130639 (3d Cir. Mar. 9, 2020)........12

*Bradley v. Pittsburgh Bd. of Educ.*,
    913 F.2d 1064 (3d Cir. 1990) .............................................................17

*Calex Express, Inc. v. Bank of America*,
    401 F.Supp.2d 407 (M.D.Pa. 2005)....................................................15

*Compass Bank v. Calleja-Ahedo*,
    569 S.W.3d 104 (Tex. 2018) ...............................................................15

*Cont'l Bank v. Fitting*,
    559 P.2d 218 (Az. App.1977)..............................................................24

*Enslin v. Coca-Cola Co.*,
    2017 WL 3727033; *aff'd* 739 F. App'x 91 (3d Cir. 2018) ...............22

*Gardner v. MGC Mortg., Inc.*,
    2013 WL 800741 (M.D. Ala. 2013) ...................................................24

*Hollywood v. First National Bank of Palmerton*,
    859 A.2d 472 (Pa. Super. 2004) .........................................................14

*ITT Corp. v. Intelnet Int'l Corp.*,
    366 F.3d 205 (3d Cir. 2004) ...............................................................17

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
   458 F.3d 244 (3d Cir. 2006) ...............................................................................17

*Lincoln Nat'l Bank & Trust Co. v. Peoples Trust Bank*,
   379 N.E.2d 527 (Ind. App. 1978) .......................................................................24

*Lutheran v. Loral Fairchild Corp.*,
   688 A.2d 211 (Pa. Super. 1997) .........................................................................22

*Marran v. Marran*,
   376 F.3d 143 (3d Cir. 2004) ...............................................................................17

*Martin v. Capital Cities Media, Inc.*,
   511 A.2d 830 (Pa. Super. 1986) .........................................................................23

*Matlack Leasing, LLC v. Morison Cogen, LLP*,
   No. CIV.A. 09-1570, 2010 WL 114883 (E.D. Pa. Jan. 13, 2010) ....................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)........................................................................................8, 9

*Morosetti v. Louisiana Land and Exploration Co.*,
   564 A.2d 151 (Pa. 1989).....................................................................................22

*Office of Disciplinary Counsel v. Kiesewetter*,
   889 A.2d 47 (Pa. 2005).......................................................................................17

*Opoka v. I.N.S.*,
   94 F.3d 392 (7th Cir.1996) .................................................................................18

*Rode v. Dellarciprete*,
   845 F.2d 1195 (3d Cir. 1988) ...............................................................................7

*Rodic v. Thistledown Racing Club, Inc.*,
   615 F.2d 736 (6th Cir.), cert. denied, 449 U.S. 996, 101 S.Ct. 535,
   66 L.Ed.2d 294 (1980).......................................................................................18

*Schaar v. Lehigh Valley Health Servs., Inc.*,
   732 F. Supp. 2d 490 (E.D. Pa. 2010)....................................................................9

*Schaller v. Marine Nat. Bank of Neenah*,
   388 N.W.2d 645 (Wis. App. 1986).................................................................23, 24

ii

*Seeger v. First Union Nat. Bank,*
  836 A.2d 163 (Pa. 2003) ..................................................................................11

*Sherman Industries, Inc. v. Goldhammer,*
  683 F.Supp. 502 (E.D. Pa. 1988) ...........................................................19, 20

*Silverman Partners, L.P. v. First Bank,*
  687 F. Supp.2d 269 (E.D. N.Y. 2010) .............................................................24

*Solomon v. U.S. Health Care Sys. of Penna., Inc.,*
  62 Pa. D. & C.4th 104, 2001 WL 34149359 (Pa. C.C.P. Phila.
  2001); *aff'd sub nom.* 797 A.2d 346 (Pa. Super. 2002) ......................................23

*St. Louis Baptist Temple, Inc. v. FDIC,*
  605 F.2d 1169 (10th Cir.1979) .......................................................................18

*Stacey v. City of Hermitage,*
  Civ. No. 2:02-cv-1911, 2008 WL 941642 (W.D. Pa. Apr. 7, 2008) .................19

*Williams v. Borough of W. Chester, Pa.,*
  891 F.2d 458 (3d Cir. 1989) .............................................................................9

**Statutes**

13 Pa. C.S.A. § 4406(f) ..................................................................................14, 15

13 Pa.C.S. § 1103 ...............................................................................................9

Pennsylvania Uniform Commercial Code ..........................................................9, 25

Uniform Commercial Code ..........................................................................9, 15, 14

**Other Authorities**

Federal Rules of Civil Procedure Rule 56(c) .................................................7, 8, 9

Yale L.J. 1396 (1980) ..........................................................................................9

iii

NOW COMES Defendant Branch Banking and Trust Company, Successor by Merger to Susquehanna Bank[1] (the "Bank"), by and through its undersigned counsel and hereby files this Brief in Support of its Motion for Summary Judgment, stating as follows:

## I.    INTRODUCTION

This matter was brought by a customer of BB&T's predecessor, Susquehanna Bank[2], to recover money she claims was stolen by her step-son out of a joint bank account. Only one cause of action remains —breach of contract. It is clear that there was no specific provision of the contract between the Bank and Plaintiff that the Bank violated. At all times, the Bank complied with its responsibilities under the parties' agreement. Meanwhile, Plaintiff failed to monitor her bank statements or report any unauthorized withdrawals for years after the alleged theft. The Bank is not liable to Plaintiff for the potentially wrongful actions of a joint account holder where the Bank was not alerted to any wrongful conduct and fully complied with the account agreement. The Bank is entitled to summary judgment as a matter of law.

---

[1] The Bank is now known as Truist Bank. A joint stipulation will be filed reflecting this name change.

[2] BB&T is only a party to this matter as successor to Susquehanna Bank.

## II.    STATEMENT OF FACTS

Plaintiff, Barbara Johnson ("Barbara") and Richard Johnson, Sr. ("Senior") were married or living together for thirty years as of 2014. *See* Statement of Undisputed Material Facts ("Statement"), ¶ 1. They co-owned four properties in Kennett Square, Pennsylvania. Statement ¶ 2. They lived in one of the properties, and Barbara's children lived in the other properties, rent free.

On New Year's Eve of 2014, two of the properties—200 and 202 East Linden Street—caught fire and suffered substantial damage. Statement ¶ 3. Accordingly, Barbara and Senior filed an insurance claim for the damage. Statement ¶ 4. Senior opened a bank account with the Bank to handle all payments for repairs and renovations to the property and to deposit the insurance payments. Statement ¶ 5.

Senior had a preexisting bank account with the Bank, so he was not required to sign a new customer agreement when opening the account. Statement ¶ 6. Specifically, prior to January 2015, Senior opened an individual checking account at the Bank. Statement ¶ 7. This account was assigned an account number ending in 0301 (the "0301 Account"). Statement ¶ 8. The Account Agreement between the Bank and Senior stated "[t]his Agreement is designed to eliminate most signature cards and written authorizations when opening future accounts." Statement ¶ 6.

2

The 0301 Account also listed Richard A. Johnson Jr. ("Junior"), Senior's son and Barbara's step-son, as the attorney-in-fact for Senior. Statement ¶ 9. Senior gave Junior a power of attorney over all of his accounts at the Bank. Statement ¶ 9. Junior's Account Agreement also eliminated the need for signature cards on future accounts. By their express terms, both the Senior and Junior's Account Agreements applied to both their 0301 Account and all other accounts opened at Susquehanna Bank, like the 3114 Account. Statement ¶ 10.

Senior had his son Junior added to the 3114 Account, so he was a joint account holder along with Barbara. Statement ¶ 11. Barbara claims she was not aware of this. Statement ¶ 12. In any event, the bank statements beginning in February 2015 name Junior, Senior and Barbara as joint account holders. Statement ¶ 13. However, because the fire destroyed their home, Barbara and Senior instructed all bank statements be sent to 321 Pemberton Road, Kennett Square, Pennsylvania. Statement ¶ 16. Despite Barbara listing this address, it is a vacant property that Barbara did not own nor monitor. Statement ¶¶ 17-18. Barbara never reviewed the bank statements for the account, nor did she review her statements online or call in to the Bank to ascertain the status of the account. Statement ¶¶ 19-21.

Each of these bank statements included the names of Barbara, Senior and Junior as joint account owners. Statement ¶ 22. Barbara agrees that had she been

3

checking the bank account statements, she would have realized that the 3114 Account was titled jointly with Junior. Statement ¶ 23. Barbara also agrees that had she seen Junior's name on the 3114 Account statements, she would have "immediately notified the bank" that she had concerns about the titling of the account. Statement ¶ 24. Although statements were sent to the Pemberton Road address from February through May, in June 2015 the address of record for the 3114 Account was changed to 519 School House Road, Kennett Square, Pennsylvania 19348. Statement ¶¶ 19, 25. Barbara did not notice this change, as she had not been receiving or reviewing the statements in the first place. Statement ¶ 26.

Barbara recalls receiving and signing several checks from the insurer for the fire loss for deposit in the 3114 Account. Statement ¶ 27. She agrees that Senior was authorized to deposit the checks into the 3114 Account. Statement ¶ 28. She was also aware that Junior had power of attorney for Senior at the Bank. Statement ¶ 29. However, Barbara did not review the power of attorney and was not aware of its scope.  The power of attorney allowed Junior to conduct transactions on behalf of his father for all accounts at the Bank. Statement ¶ 30. Moreover, the Susquehanna Account Agreement signed by Barbara specifically indicated that "[w]e may accept for deposit any item payable to you or your order, even if they are not indorsed by you." Statement ¶ 14.

Over the course of the following six months, just over $500,000 in insurance checks were deposited and withdrawn from the 3114 Account. Statement ¶ 31. Although bank statements showing these withdrawals were sent to the address Barbara herself provided, she claims she did not look at the bank statements and left that to her husband, Senior. Statement ¶ 34.

Richard Sr. passed away in September 2015. Statement ¶ 35. Following his death, Barbara learned that there were only "pennies" left in the 3114 Account by calling in to the Bank to inquire of the balance. Statement ¶ 36. She did not raise any complaint to the Bank at that time or in any way alert the Bank to any dispute with the titling of Account 3114 or any transaction. Statement ¶ 37. The first notice she gave to the Bank of any claimed fraud was on April 6, 2017, at least 18 months if not more than two years after (1) a statement was sent that showed the account was titled to Senior, Junior, and Barbara, (2) transactions occurred that Barbara now disputes, and (3) Barbara concedes she discovered the alleged fraud. Statement ¶¶ 19, 23, 36, 38.

In December 2015, Barbara brought a claim against Junior in the Chester County Orphans' court for his alleged conversion of the funds. Statement ¶ 39. Following trial, the Honorable Judge Tunnell issued an opinion holding that Junior deposited $509,110 in the 3114 Account titled to Barbara, Senior, and Junior. Statement ¶ 40. The Court entered judgment in favor of Barbara for $200,000,

5

representing the amount that Junior could not account for, and that he did not spend on renovations to the properties. Statement ¶ 41. This decision was not appealed by Barbara.

The relationship between the Bank and Barbara is governed by the Susquehanna Account Agreement. Statement ¶ 42. Pursuant to the Susquehanna Account Agreement, Barbara was obligated to promptly review her statements no later than thirty days after they were issued and then report any disputes on those statements no later than sixty days after issuance. Statement ¶ 43.

Barbara has brought this action against the Bank, claiming that the Bank breached its contract with her in four specific ways: (1) by allowing Junior to be added to the account, (2) by allowing Junior to change the address for the account; (3) by allowing Junior to deposit checks with forged signatures in the account, and (4) by allowing Junior to withdraw funds from the account. *See* Second Amended Complaint, ECF Doc. 32.

## III. QUESTIONS PRESENTED

### A. WHETHER PLAINTIFF'S CLAIMS ARE BARRED BECAUSE SHE FAILED TO NOTIFY THE BANK OF ANY UNAUTHORIZED WITHDRAWALS WITHIN 60 DAYS OF THEIR OCCURRENCE?

**Suggested Answer:** *Yes.*

### B. WHETHER PLAINTIFF'S CLAIMS ARE BARRED BECAUSE SHE DID NOT NOTIFY THE BANK OF ALLEGED

UNAUTHORIZED WITHDRAWALS WITHIN ONE YEAR OF
THEIR OCCURRENCE?

> Suggested Answer: *Yes.*

**C.** **WHETHER PLAINTIFF'S CLAIMS ARE BARRED BECAUSE FACTS ESSENTIAL TO HER CLAIMS HAVE BEEN DETERMINED AGAINST HER IN A PRIOR ADJUDICATION?**

> Suggested Answer: *Yes.*

**D.** **WHETHER PLAINTIFF HAS INSUFFICIENT EVIDENCE TO SUPPORT HER CLAIM FOR BREACH OF CONTRACT?**

> Suggested Answer: *Yes.*

**E.** **WHETHER PLAINTIFF IS PRECLUDED FROM RELYING ON BANK POLICY DOCUMENTS, AS THESE DO NOT ESTABLISH AN INDEPENDENT DUTY OWED TO PLAINTIFF?**

> Suggested Answer: *Yes.*

## IV.   ARGUMENT

In deciding a motion for summary judgment, the Court is governed by Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show no genuine issue as to any material fact. *Rode v. Dellarciprete*, 845 F.2d 1195, 1999 (3d Cir. 1988). Although genuine disputes of material fact must be resolved in favor of the party opposing the motion, "when the moving party has carried its burden

7

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[t]he inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must, as a matter of law, prevail over the other." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Big Apple BMW, Inc., v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992). Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that demonstrates that there is genuine issue of fact for trial. *Big Apple BMW, Inc.*, at 1362-63.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the record evidence establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Although genuine disputes of material fact must be resolved in favor of the party opposing the motion, "when the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[U]nsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 461 (3d Cir. 1989)). As explained herein, Barbara has not met and cannot meet this burden, and the material facts in this case establish that the Bank is entitled to summary judgment.

Here, the Bank took every action it was required to under the Susquehanna Account Agreement and Pennsylvania Law. "The Uniform Commercial Code has two basic purposes: to respond fairly and flexibly to commercial realities, and to serve as a uniform body of rules that clearly governs commercial transactions." *Contractual Interactions and the Uniform Commercial Code*, 89 Yale L.J. 1396 (1980). The stated purpose of the Pennsylvania Uniform Commercial Code is to simplify, clarify and modernize the law governing commercial transactions and to permit the continued expansion of commercial practices through custom, usage and agreement of the parties. *See* 13 Pa.C.S. § 1103. These standard rules are necessary to the function of a national banking system. Here, the Bank complied with its

duties to Plaintiff, it properly followed the instructions of a joint account holder,

and it is entitled to judgment as a matter of law.

**A.      Plaintiff failed to notify the Bank of any unauthorized
withdrawals within 60 days of their occurrence, so claims for any
withdrawals prior to February 6, 2017 are barred by the terms of
the contract.**

The Agreement is abundantly clear that Barbara had an obligation to notify

the Bank of any unauthorized withdrawals within sixty days after the statement

showing the withdrawals was issued. The Susquehanna Account Agreement states

in relevant part:

> **STATEMENTS - Your duty to report unauthorized signatures,
> alterations and forgeries -** You must examine your statement of
> account with reasonable promptness. If you discover (or reasonably
> should have discovered) any unauthorized signatures or alterations,
> you must promptly notify us of the relevant facts.  As between you
> and us, if you fail to do either of these duties, you will have to either
> share the loss with us, or bear the loss entirely yourself (depending on
> whether we used ordinary care and, if not, whether we substantially
> contributed to the loss).  The loss could be not only with respect to
> items on the statement but other items with unauthorized signatures or
> alterations by the same wrongdoer.
> You agree that the time you have to examine your statement and
> report to us will depend on the circumstances, but will not, in any
> circumstance, exceed a total of 30 days from when the statement is
> first sent or made available to you. You further agree that if you fail to
> report any unauthorized signatures, alterations or forgeries in your
> account within 60 days of when we first send or make the statement
> available, you cannot assert a claim against us on any items in that
> statement, and as between you arid us the loss will be entirely yours.
> This 60-day limitation is without regard to whether we used ordinary
> care. The limitation in this paragraph is in addition to that contained in
> the first paragraph of this section.

7753210.1

**Your duty to report other errors -** In addition to your duty to review your statements for unauthorized signatures. alterations and forgeries. you agree to examine your statement with reasonable promptness for any other error - such as an encoding error. You agree that the time you have to examine your statement and report to us will depend on the circumstances. However, such time period shall not exceed 60 days. Failure to examine your statement and report any such errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any such errors on items identified in that statement and as between you and us the loss will be entirely yours.

Statement ¶ 15. In this case, all of the funds at issue were withdrawn from the 3114 Account during the period January 21, 2015 through October 14, 2015.  Barbara did not notify the Bank that she objected to her step-son, Junior's withdrawal of funds from the 3114 Account until sending a letter dated April 6, 2017 from her attorney to the Bank. Statement ¶ 38.

The first statement showing (1) account titling and (2) account activity that Barbara claims were improper is dated February 15, 2015. Accordingly, if Barbara believed that the withdrawals were not permissible, she had an obligation to notify the Bank by April 16, 2015. She did not do so. Had she done so, the Bank could have timely evaluated the dispute and, if improper activities were occurring, taken appropriate measures like freezing the account or otherwise clarifying account ownership. Accordingly, any allegedly unauthorized withdrawals for Account 3114 are not recoverable. *Seeger v. First Union Nat. Bank*, 836 A.2d 163, 166 (Pa. 2003) (holding that if the bank could provide that customer failed to provide timely

11

notice of unauthorized withdraw under the contract terms, it would be relieved of all liability).

As recently as last year, this Court enforced the contractual requirement for a customer to monitor statements and notify the bank of any questionable transactions. *Binns v. BB & T Bank*, 377 F. Supp. 3d 487, 490 (E.D. Pa. 2019), *aff'd sub nom. Binns v. Truist Bank*, No. 19-2157, 2020 WL 1130639 (3d Cir. Mar. 9, 2020). In *Binns*, the customer was subject to the same thirty day monitoring and sixty day notice requirements as Barbara is here. *Id.* Just this month, the Third Circuit affirmed that decision, which granted BB&T summary judgment.

The Susquehanna Account Agreement that Barbara agreed to required her to exercise reasonable promptness to examine her bank statements to discover and report to the Bank any unauthorized signatures or forgeries on any check drawn on Account 3114.  The Susquehanna Account Agreement further provided that the Bank would have no liability to the Bank if she failed to discover and report any unauthorized or forged signature on any check within sixty days of when the bank statement is "first sent or made available to [her]." Statement ¶ 15.

There is no factual dispute that Barbara failed to monitor the statements and report to the Bank the alleged account titling dispute or unauthorized transactions of Junior on the checks at issue within the 60-day period. Barbara, however, seeks to avoid this contractual and statutory limitation by arguing that Junior wrongfully

12

changed the address of record for the 3114 Account so that the bank statements were being mailed to him and not to Barbara.

Aside from the fact that Barbara directed the mailing of the monthly bank statements to a vacant lot and testified that she never even sought to review the bank statements, the Susquehanna Account Agreement makes the sending of bank statements by mail only one of several ways to "make the statement available." Barbara did not review her mailed statements, but she also did not seek a copy from the Bank by visiting a branch, calling into the Bank, or accessing a copy online. Statement ¶ 20, 21, 23.

When Barbara failed to receive her monthly bank statements, she should have contacted her branch and inquired as to the reason why the statement was not received.  Had she done so, she could have provided a different mailing address for the account. Again, Barbara could have availed herself of the Bank's internet banking service and monitored and reviewed the transactions in her account as frequently as daily or simply called into the Bank to request the account's status, as she did in September 2015.  In this case, Barbara admits that she did not do so. Statement ¶ 20, 21, 23.

Barbara cannot prevail on a claim for breach of contract when she violated material terms of that contract that were specifically in place to avoid the type of loss for which she complains. Barbara had a responsibility to monitor her

statements and report any irregularities within sixty days. Her failure to do so

precludes recovery as a matter of law.

**B.**     **Plaintiff failed to notify the Bank of any unauthorized withdrawals within one year of their occurrence, so claims for any withdrawals prior to April 6, 2016 are barred by the Uniform Commercial Code.**

Pennsylvania's Uniform Commercial Code places an absolute bar on the

right of a customer to make a claim for payment of altered or unauthorized checks

without regard to care or lack of care of either the customer or the Bank. In all

cases, "a customer who does not within one year after the statement or items are

made available to the customer discover and report the customer's unauthorized

signature on or any alteration on the item is precluded from asserting against the

Bank the unauthorized signature or alteration." 13 Pa. C.S.A. § 4406(f).

Accordingly, Barbara is barred from recovery.

In a similar matter, *Hollywood v. First National Bank of Palmerton*, 859

A.2d 472 (Pa. Super. 2004), a daughter allegedly converted assets from a

decedent's accounts to her own use during a time when decedent was under her

care and mentally unable to handle his own affairs. The estate alleged, among other

things, a claim of unauthorized payment by the defendant banks with respect to

checks drawn on decedent's accounts and paid by them. *Id*. at 474. Because the

action was brought several years after the last of the subject checks had been paid,

the trial court found the estate's claims barred by the applicable one-year limitation

period set forth in 13 Pa.C.S. § 4406(f). On appeal, the Pennsylvania Superior Court affirmed, holding that the limitation period under § 4406(f) applies mechanically to bar actions brought untimely and is not tolled by the "discovery rule."

Section 4406(f) is not a statute of limitation, but rather a precedent to an action which, unlike a statute of limitation, cannot be tolled: "If the customer does not notify the bank within one year, then the customer loses his or her right to bring suit on those claims regardless of the otherwise applicable statute of limitations period." *Calex Express, Inc. v. Bank of America*, 401 F.Supp.2d 407 (M.D.Pa. 2005).

The Supreme Court of Texas, reviewing an identical UCC provision and a nearly identical situation, rejected a customer's argument that the one-year reporting requirement was not applicable because the fraudster changed the address on the statements. *Compass Bank v. Calleja-Ahedo*, 569 S.W.3d 104, 108 (Tex. 2018). In *Compass*, like here, although the purported fraudster changed the address for the account statements, because the statements were available by "other means," the customer's duty to examine the statements and report fraud still existed and the failure to do so barred recovery against the bank. *Id.* Like the customer in *Compass*, Barbara had a duty to monitor the Account 3114 statements both before and after the address was changed. Barbara knowingly listed an

15

address she had no intention of monitoring for bank statements for several months in early 2015 before the address was changed. Statement ¶ 20. She concedes that if she would have reviewed just one of those statements it would have revealed joint titling with Junior and Senior for which she would have immediately objected. Statement ¶ 23.

Here, Barbara had a strict one-year period in which she could alert the Bank regarding any unauthorized deposit or withdrawal of funds. Statements were made available to Barbara starting in February 2015 that revealed the joint titling of the 3114 Account with Junior and transactions she now claims were fraudulent. Statement ¶ 19. This is over two years prior to her April 2017 letter to the bank. Statement ¶ 38. Barbara failed to monitor those statements, which revealed the account titling and transactions she now disputes. Statement ¶ 22.  Even when Barbara discovered that the account proceeds had been depleted in September 2015, she waited over 18 months to notify the bank of her claims that Junior was improperly listed as a joint account owner or that he had conducted unauthorized transactions. Statement ¶¶ 36-37.  Accordingly, she is now barred from pursuing any claims related to allegedly unauthorized signatures as a result of the UCC's strict one year reporting requirement.

**C.**   **Plaintiff's claim is barred because facts essential to her action have previously been determined against her, and she is collaterally estopped from relitigating these facts.**

Collateral estoppel—sometimes called issue preclusion—bars re-litigation of an issue that has already been litigated to conclusion in a prior action. *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990). Under both prevailing Third Circuit precedent and Pennsylvania law, collateral estoppel applies if "(1) the identical issue was previously adjudicated, (2) the issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006); *accord Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005).

Similar to the collateral estoppel doctrine, the *Rooker-Feldman* doctrine bars a federal court action that essentially seeks to re-litigate a state court judgment for a different result. "A case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication." *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004) (citing *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004)). The *Rooker-Feldman* doctrine bars a claim if—in order to grant the plaintiff's requested

relief—the court will be required to determine that the state court judgment was wrongly entered. *Id.* at 150.

Here, Barbara has previously litigated against Junior for the exact same loss she is seeking to recover here. There, the Chester County Orphans' Court held that Junior had joint title to the Bank Account. ¶ 13. Under both the principles of collateral estoppel and the *Rooker-Feldman* doctrine, Barbara cannot now relitigate this fact to reach a different decision before this Court. Indeed, this Court should take judicial notice of the fact that Junior is the joint owner of the 3114 Account. *See, e.g., Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir.1996) (holding that the court has a positive obligation to take judicial notice of relevant determinations in other courts, "both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue"); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.), cert. denied, 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294 (1980) (federal courts may take judicial notice of proceedings in other courts of record) (citation omitted); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979) (same).

Plaintiff is accordingly precluded from arguing that Junior was not a joint owner of the 3114 Account. Indeed, Barbara's only claims are that the Bank should not have permitted Junior to take certain actions, such as changing the statement mailing address or making withdrawals from the account, when he was not a titled

18

account holder. These arguments fail as a matter of law because Plaintiff is precluded from arguing that Junior is not a titled account owner. The Bank is therefore entitled to summary judgment.

> **D.     Plaintiff has insufficient evidence to support a claim for breach of contract.**

Barbara has only one remaining count in this matter—breach of contract. She claims that the Bank breached the contract with her in four ways: (1) by allowing Junior to be added to the account, (2) by allowing Junior to change the address for the account; (3) by allowing Junior to deposit checks with forged signatures in the account, and (4) by allowing Junior to withdraw funds from the account. None of this conduct violated the Susquehanna Account Agreement in any way.

In actuality, Barbara is trying to shoehorn a tort claim-which has already been rejected by this Court- into a breach of contract cause of action. *See* Order Dismissing Negligence Claims with Prejudice, ECF 31.  This is simply not permissible. *See Stacey v. City of Hermitage,* Civ. No. 2:02-cv-1911, 2008 WL 941642, *7 (W.D. Pa. Apr. 7, 2008) ("[the p]laintiff cannot repackage the claim under an assumpsit theory to … avoid the two-year statute of limitations"). A tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct. *Sherman Industries, Inc. v. Goldhammer*, 683 F.Supp. 502, 506 (E.D. Pa. 1988).

7753210.1

This Court may not allow a breach of contract claim to proceed to trial where no provision of the contract has been identified as breached. To sustain a claim for breach of contract, Barbara must show that there was a contract and that the Bank breached specific provisions of that contract. *Sherman Industries*, 683 F.Supp. at 506. "[T]he plaintiff claiming under a contract theory must raise an issue as to whether it specifically instructed the defendant to perform a task that the defendant failed to perform…" *Id*.; *see also Matlack Leasing, LLC v. Morison Cogen, LLP*, No. CIV.A. 09-1570, 2010 WL 114883, at *7 (E.D. Pa. Jan. 13, 2010) ("Without identifying an express contractual duty, separate and independent of a contracted-for duty to act in accordance with standards of professional care, [plaintiff] cannot state a claim sounding in contract.").

Barbara claims that the Susquehanna Account Agreement required her consent to have Junior added to the account. This simply is not the case; there is no such requirement in the contract. Barbara also argues that there must be a customer agreement dated January 21, 2015 for Richard Jr. to have been added, but there *was* a universal customer agreement that replaced the need for multiple signature cards on file for Junior. Junior's customer agreement expressly stated it would apply to future accounts, like the 3114 Account. Barbara cannot point to a single contractual provision and identify any way that the Bank did not live up to its end of the bargain.

At her deposition, Barbara repeatedly stated that she "expected" the Bank would do certain things, such as requiring her signature on a check to deposit it in her account, but she was unable to point to any provision of the contract that was in accordance with her expectations. The terms of the Susquehanna Account Agreement permitted one joint owner to withdraw funds, as is common banking practice. Statement ¶ 15 ("Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs to open the account or had authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time."). This was not a breach of the Agreement; in fact, it was the Bank's responsibility under the Agreement to comply with the direction of a joint account holder. The Agreement permitted any owner to deposit a check in the account, whether signed or not, as long as it was made out to a joint account owner. Statement ¶ 15 ("We may accept for deposit any item payable to you or your order, even if they are not indorsed by you."). Nothing in the Susquehanna Account Agreement prevented Senior from adding Junior to the account, nor prevented Junior from changing the mailing address for statements. Statement ¶ 15 ("You may request a change to the account…Changes may be made by any account holder or authorized signer.").

Barbara cannot identify any provisions of the contract that the Bank breached, so the Bank is entitled to judgment as a matter of law.

**E.      Plaintiff may not rely on alleged violations of internal bank policy, as bank policies do not give rise to an independent duty owed to Plaintiff.**

It is anticipated that Barbara will claim that the Bank violated internal policies in opening the 3114 Account. However, the Bank's internal company policies do not create any contractual obligations between Barbara and the Bank. Therefore, whether or not the Bank complied with its internal guidance and policies is irrelevant to the issue of whether the Bank breached a contract with Barbara.

The Pennsylvania Supreme Court has clearly articulated that the adoption of internal company policies does not create a contractual duty to those potentially benefitting from the policies. *Morosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151, 153 (Pa. 1989).  Specifically, internal company policies do not become binding contract terms unless they are communicated as part of the agreed upon offer. *Id.; Lutheran v. Loral Fairchild Corp*., 688 A.2d 211, 216 n.3 (Pa. Super. 1997) ("A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer [of the contract] they are free to change as events may require."); *see also Enslin v. Coca-Cola Co.*, 2017 WL 3727033, at *8 (E.D. Pa. 2017, aff'd, 739 F. App'x 91 (3d Cir. 2018) (employee non-compliance with company policies contained in employee handbook did not create contract liability

to potential beneficiaries of the policies); *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 837 (Pa. Super. 1986); *Bernstein v. Commonwealth*, 617 A.2d 55, 61 (Pa. Cmwlth. 1992) (absent evidence the policy was communicated as part of the offer, the benefits provided under a company policy are unenforceable as a contract).

The Bank's internal company policies were not provided to Barbara prior to entering into any contract, nor are the policies incorporated into the contracts. Therefore, the Bank's internal company policies are not part of the Agreement nor are they enforceable as contract terms.

Moreover, where a customer is unaware of an internal company policy at the time of entering into the agreement and does not learn of those policies until the course of litigation, the customer could not possibly have relied on representations of the internal company policy, and therefore, there is no basis to enforce the policy as contract term. *Solomon v. U.S. Health Care Sys. of Penna., Inc.*, 62 Pa. D. & C.4th 104, 117-18, 2001 WL 34149359, (Pa. C.C.P. Phila. 2001); *aff'd sub nom.* 797 A.2d 346 (Pa. Super. 2002).

Jurisdictions across the nation have recognized that internal bank policies do not impose or define a specific duty in the financial services industry. In *Schaller*, the Wisconsin Appellate Court held that when a bank maintains an internal company policy to respond in a particular way to [a particular type of transaction],

7753210.1

no duty is created to follow such policies in the absence of facts establishing a contract or estoppel. *Schaller v. Marine Nat. Bank of Neenah*, 388 N.W.2d 645, 649 (Wis. App. 1986); *see also Lincoln Nat'l Bank & Trust Co. v. Peoples Trust Bank*, 379 N.E.2d 527, 529–30 (Ind. App. 1978); *Cont'l Bank v. Fitting*, 559 P.2d 218, 220 (Az. App.1977).  Similarly, in 2010, in *Silverman Partners, L.P.*, it was observed that unlike statutes that may be used to define the standard of care, a bank's internal company policies are intended to protect the bank and the public generally, and they cannot be used to form the basis of an action by a customer. *Silverman Partners, L.P. v. First Bank*, 687 F. Supp.2d 269, 282 (E.D. N.Y. 2010); *see also Gardner v. MGC Mortg., Inc*., 2013 WL 800741 (M.D. Ala. 2013) (internal company policies do not create a legally enforceable duty on financial institution).

The Bank's internal company policies were not incorporated into the Susquehanna Account Agreement, and Barbara had no knowledge of the internal company policies until discovery in this litigation. Barbara cannot now attempt to assert that the policies impose a contractual obligation or duty on the Bank in favor of Barbara. Summary judgment is warranted as the internal company policies do not impose any enforceable obligation on the Bank.

## V.     CONCLUSION

In this matter, Plaintiff, Barbara Johnson, has brought a breach of contract claim against the Bank. She cannot, however, establish the necessary facts to support her cause of action. Moreover, she failed to comply with her own contractual responsibilities to alert the Bank to any alleged unauthorized withdrawals within sixty days and the Pennsylvania UCC requirement to notify the bank within one year. Plaintiff cannot recover the funds her step-son allegedly misappropriated by pursuing the Bank, as the Bank fully complied with its contractual obligations to Plaintiff.

WHEREFORE Defendant Branch Banking and Trust Company, Inc., as successor to Susquehanna Bank, hereby requests this Honorable Court enter judgment in its favor and against Plaintiff.

BARLEY SNYDER


Dated: <u>April 1, 2020</u>          By: <u>/s/Justin A. Tomevi</u>
                                   Robert J. Tribeck, Esquire
                                   PA I.D. No. 74486
                                   Justin A. Tomevi, Esquire
                                   PA I.D. No. 313661
                                   213 Market Street, 12th Floor
                                   Harrisburg, PA 17101
                                   rtribeck@barley.com
                                   jtomevi@barley.com

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2020, a true and correct copy of the foregoing

document was served electronically on the following:

> Marvin J. Powell, Esq.
> Powell Law Associates, LLC
> 234 Kennedy Drive
> South Coatesville, PA 19320
> Attorney for Plaintiff
>
> Eugene A. Steger, Jr., Esquire
> Eugene Steger & Associates PC
> 411 Old Baltimore Pike
> Chadds Ford, PA 19317
> Attorney for Third-Party Defendant

I understand that notice of this filing will be sent to all parties of record by

operation of the Court's electronic filing system, and that parties may access this

filing through the Court's system.

> BARLEY SNYDER
>
>
> By: /s/Justin A. Tomevi
>     Robert J. Tribeck, Esquire
>     PA I.D. No. 74486
>     Justin A. Tomevi, Esquire
>     PA I.D. No. 313661
>     213 Market Street, 12th Floor
>     Harrisburg, PA 17101
>     rtribeck@barley.com
>     jtomevi@barley.com