## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA JOHNSON, | |
| Plaintiff, | CIVIL ACTION NO.: 2:17-CV-04490-JCJ |
| v. | |
| BRANCH BANKING AND TRUST COMPANY, SUCCESSOR BY MERGER TO SUSQUEHANNA BANK, | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| RICHARD A. JOHNSON, JR. and VIRGINIA THOMAS | |
| Third-Party Defendants. | |

## DEFENDANT/THIRD PARTY PLAINTIFF'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARLEY SNYDER LLP

Robert J. Tribeck, Esq. PA I.D. No. 74486
Justin A. Tomevi, Esq. PA I.D. No. 313661
213 Market Street, 12th Floor
Harrisburg, PA 17101
rtribeck@barley.com
jtomevi@barley.com
*Attorneys for Defendant/Third Party Plaintiff*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................1

II.  COUNTER STATEMENT OF FACTS .....................................................2

III. QUESTIONS PRESENTED ......................................................................6

    A.   WHETHER BARBARA HAS FAILED TO
         ESTABLISH ANY CONTRACTUAL VIOLATION
         BY THE BANK? .............................................................6

    B.   WHETHER BARBARA IS COLLATERALLY
         ESTOPPED FROM RELITIGATING THE
         TITLING OF THE 3114 ACCOUNT AS A COURT
         HAS ALREADY HELD THAT IT WAS JOINTLY
         TITLED? ..........................................................................7

    C.   WHETHER, UNLIKE THE BANK, BARBARA
         CANNOT RELY ON FACTS FROM THE PRIOR
         CASE? .............................................................................7

IV.  ARGUMENT ...............................................................................................7

    A.   BARBARA HAS FAILED TO ESTABLISH ANY
         CONTRACTUAL VIOLATION BY THE BANK. ........................8

    B.   BARBARA IS COLLATERALLY ESTOPPED
         FROM RELITIGATING THE TITLING OF THE
         3114 ACCOUNT AS A COURT HAS ALREADY
         HELD THAT IT WAS JOINTLY TITLED..................................15

    C.   UNLIKE THE BANK, BARBARA CANNOT RELY
         ON FACTS FROM THE PRIOR CASE. ........................17

V.   CONCLUSION ..........................................................................................19

7777176.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arco Metalscraft Co. v. Shaw*,
   70 A.2d 850 (Pa. 1950)........................................................................................8

*Binns v. BB & T Bank*,
   377 F. Supp. 3d 487 (E.D. Pa. 2019), *aff'd sub nom. Binns v. Truist
   Bank*, No. 19-2157, 2020 WL 1130639 (3d Cir. Mar. 9, 2020)........................14

*Bradley v. Pittsburgh Bd. of Educ.*,
   913 F.2d 1064 (3d Cir. 1990) ...........................................................................15

*Compass Bank v. Calleja-Ahedo*,
   569 S.W.3d 104 (Tex. 2018) .............................................................................14

*Hillgartner v. Port Authority of Allegheny County*,
   936 A.2d 131 (Pa. Cmwlth. 2007)....................................................................19

*Intili v. Salak*,
   589 A.2d 761 (Pa. Super. 1991) .......................................................................18

*ITT Corp. v. Intelnet Int'l Corp.*,
   366 F.3d 205 (3d Cir. 2004) .............................................................................16

*Jackson v. Allstate Ins. Co.*,
   441 F. Supp. 2d 728 (E.D. Pa. 2006)..................................................................7

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
   458 F.3d 244 (3d Cir. 2006) .............................................................................15

*Marran v. Marran*,
   376 F.3d 143 (3d Cir. 2004) .............................................................................16

*Matthews v. Unisource Worldwide, Inc.*,
   748 A.2d 219(Pa. Super. 2000) ..........................................................................8

*Office of Disciplinary Counsel v. Kiesewetter*,
   889 A.2d 47 (Pa. 2005)......................................................................................15

*Opoka v. I.N.S.*,
  94 F.3d 392 (7th Cir.1996) ...............................................................................16

*Rickard v. Am. Nat'l Prop. & Cas. Co.*,
  173 A.3d 299 (Pa. Super. 2017) .......................................................................18

*Rode v. Dellarciprete*,
  845 F.2d 1195 (3d Cir. 1988) .............................................................................7

*Rodic v. Thistledown Racing Club, Inc.*,
  615 F.2d 736 (6th Cir.), cert. denied, 449 U.S. 996, 101 S.Ct. 535,
  66 L.Ed.2d 294 (1980) ......................................................................................16

*Seeger v. First Union Nat. Bank*,
  836 A.2d 163 (Pa. 2003) ...................................................................................14

*Snyder v. Gravell*,
  666 A.2d 341 (Pa. Super. 1995) ..........................................................................8

*St. Louis Baptist Temple, Inc. v. FDIC*,
  605 F.2d 1169 (10th Cir.1979) ..........................................................................17

*Thompson v. Karastan Rug Mills*,
  323 A.2d 341 (Pa. Super. 1974) ........................................................................18

*Westfield Ins. Co. v. Astra Foods Inc.*,
  134 A.3d 1045 (Pa. Super. 2016), appeal denied, 158 A.3d 1226
  (Pa. 2016) ..........................................................................................................18

*Zenner v. Goetz*,
  188 A. 124 (Pa. 1936) .........................................................................................7

## Statutes

13 Pa.C.S.A. § 4406(f) ...................................................................................13, 14

Pennsylvania UCC ....................................................................6, 13, 14, 15, 20

## Other Authorities

Federal Rule of Evidence 302 ...............................................................................7

Federal Rules of Civil Procedure Rule 56(c) .........................................................7

7777176.1

NOW COMES Defendant Branch Banking and Trust Company, Successor by Merger to Susquehanna Bank[1] (the "Bank"), by and through its undersigned counsel and hereby files this Brief in Opposition to Plaintiff's Motion for Summary Judgment, stating as follows:

## I.    INTRODUCTION

This matter was brought by a customer of BB&T's predecessor, Susquehanna Bank[2], to recover money she claims was stolen by her step-son out of a joint bank account. Only one cause of action remains —breach of contract. It is clear that there is no specific provision of the contract between the Bank and Plaintiff that the Bank violated; indeed the Bank filed its own summary judgment motion. At all times, the Bank complied with its responsibilities under the parties' agreement. Meanwhile, Plaintiff failed to monitor her bank statements or report any unauthorized withdrawals for years after the alleged theft. The Bank is not liable to Plaintiff for the potentially wrongful actions of a joint account holder where the Bank was not alerted to any wrongful conduct and fully complied with the account agreement. The Bank is entitled to summary judgment as a matter of law[3], but Barbara is not and the instant Motion should be dismissed.

---

[1] The Bank is now known as Truist Bank. A joint stipulation will be filed reflecting this name change.
[2] BB&T is only a party to this matter as successor to Susquehanna Bank.
[3] The Bank has previously filed a Motion for Summary Judgment and Brief in Support, which is pending before the Court. See ECF 75-1 (Motion), 75-2, and 76.

## II.   COUNTER STATEMENT OF FACTS

Plaintiff, Barbara Johnson ("Barbara") and Richard Johnson, Sr. ("Senior") were married or living together for thirty years as of 2014. *See* Statement of Undisputed Material Facts, ECF 76 ("Statement"), ¶ 1, attached hereto as Exhibit A. They co-owned four properties in Kennett Square, Pennsylvania. Statement ¶ 2. They lived in one of the properties, and Barbara's children lived in the other properties, rent free.

On New Year's Eve of 2014, two of the properties—200 and 202 East Linden Street—caught fire and suffered substantial damage. Statement ¶ 3. Accordingly, Barbara and Senior filed an insurance claim for the damage. Statement ¶ 4. Senior opened a bank account with the Bank to handle all payments for repairs and renovations to the property and to deposit the insurance payments. Statement ¶ 5.

Senior had a preexisting account with the Bank, so he was not required to sign a new customer agreement when opening the account. Statement ¶ 6. Specifically, prior to January 2015, Senior opened an individual checking account at the Bank. Statement ¶ 7. This account was assigned an account number ending in 0301 (the "0301 Account"). Statement ¶ 8. The Susquehanna Account Agreement between the Bank and Senior stated "[t]his Agreement is designed to

eliminate most signature cards and written authorizations when opening future accounts." Statement ¶ 6.

The 0301 Account also listed Richard A. Johnson Jr. ("Junior"), Senior's son and Barbara's step-son, as the attorney-in-fact for Senior.  Statement ¶ 9.  Senior gave Junior a power of attorney over all of his accounts at the Bank. Statement ¶ 9. Junior's Account Agreement also eliminated the need for signature cards on future accounts. By their express terms, both the Senior and Junior's Account Agreements applied to both their 0301 Account and all other accounts opened at Susquehanna Bank, like the 3114 Account. Statement ¶ 10.

Senior had his son Junior added to the 3114 Account, so he was a joint account holder along with Barbara. Statement ¶ 11. Barbara claims she was not aware of this. Statement ¶ 12.  In any event, the bank statements beginning in February 2015 name Junior, Senior and Barbara as joint account holders. Statement ¶ 13. However, because the fire destroyed their home, Barbara and Senior instructed all bank statements be sent to 321 Pemberton Road, Kennett Square, Pennsylvania. Statement ¶ 16. Despite Barbara listing this address, it is a vacant property that Barbara did not own nor monitor. Statement ¶¶ 17-18. Barbara never reviewed the bank statements for the account, nor did she review her statements online or call in to the Bank to ascertain the status of the account. Statement ¶¶ 19-21.

7777176.1

Each of these bank statements included the names of Barbara, Senior and Junior as joint account owners. Statement ¶ 22. Barbara agrees that had she been checking the bank account statements, she would have realized that the 3114 Account was titled jointly with Junior. Statement ¶ 23. Barbara also agrees that had she seen Junior's name on the 3114 Account statements, she would have "immediately notified the bank" that she had concerns about the titling of the account. Statement ¶ 24. Although statements were sent to the Pemberton Road address from February through May, in June 2015 the address of record for the 3114 Account was changed to 519 School House Road, Kennett Square, Pennsylvania 19348. Statement ¶¶ 19, 25. Barbara did not notice this change, as she had not been receiving or reviewing the statements in the first place. Statement ¶ 26.

Barbara recalls receiving and signing several checks from the insurer for the fire loss for deposit in the 3114 Account. Statement ¶ 27. She agrees that Senior was authorized to deposit the checks into the 3114 Account. Statement ¶ 28. She was also aware that Junior had power of attorney for Senior at the Bank. Statement ¶ 29. However, Barbara did not review the power of attorney and was not aware of its scope. The power of attorney allowed Junior to conduct transactions on behalf of his father for all accounts at the Bank. Statement ¶ 30. Moreover, the Susquehanna Account Agreement with Barbara specifically indicated that "[w]e

may accept for deposit any item payable to you or your order, even if they are not indorsed by you." Statement ¶ 14.

Over the course of the following six months, just over $500,000 in insurance checks were deposited and withdrawn from the 3114 Account. Statement ¶ 31. Although bank statements showing these withdrawals were sent to the address Barbara herself provided and otherwise available to Barbara, she claims she did not look at the bank statements and left that to her husband, Senior. Statement ¶ 34.

Senior passed away in September 2015. Statement ¶ 35. Following his death, Barbara learned that there were only "pennies" left in the 3114 Account by calling in to the Bank to inquire of the balance. Statement ¶ 36. She did not raise any complaint to the Bank at that time or in any way alert the Bank to any dispute with the titling of the 3114 Account or any transaction. Statement ¶ 37. The first notice she gave to the Bank of any claimed fraud was on April 6, 2017, at least 18 months if not more than two years after (1) a statement was sent that showed the account was titled to Senior, Junior, and Barbara, (2) transactions occurred that Barbara now disputes, and (3) Barbara concedes she discovered the alleged fraud. Statement ¶¶ 19, 23, 36, 38.

In December 2015, Barbara brought a claim against Junior in the Chester County Orphans' court for his alleged conversion of the funds. Statement ¶ 39. Following trial, the Honorable Judge Tunnell issued an opinion holding that Junior

deposited $509,110 in the 3114 Account titled to Barbara, Senior, and Junior. Statement ¶ 40. The Court entered judgment in favor of Barbara for $200,000, representing the amount that Junior could not account for, and that he did not spend on renovations to the properties. Statement ¶ 41. This decision was not appealed by Barbara.

The relationship between the Bank and Barbara is governed by the Susquehanna Account Agreement. Statement ¶ 42. Pursuant to the Susquehanna Account Agreement, Barbara was obligated to promptly review her statements no later than thirty days after they were issued and then report any disputes on those statements no later than sixty days after issuance and no later than one year under the Pennsylvania UCC. Statement ¶ 43.

Barbara has brought this action against the Bank, claiming that the Bank breached its contract with her in four specific ways: (1) by allowing Junior to be added to the account, (2) by allowing Junior to change the address for the account; (3) by allowing Junior to deposit checks with forged signatures in the account, and (4) by allowing Junior to withdraw funds from the account. *See* Second Amended Complaint, ECF 32.

## III.   QUESTIONS PRESENTED

### A.   WHETHER BARBARA HAS FAILED TO ESTABLISH ANY CONTRACTUAL VIOLATION BY THE BANK?

**Suggested Answer: *Yes*.**

6

**B.    WHETHER BARBARA IS COLLATERALLY ESTOPPED FROM RELITIGATING THE TITLING OF THE 3114 ACCOUNT AS A COURT HAS ALREADY HELD THAT IT WAS JOINTLY TITLED?**

      **Suggested Answer:** *Yes.*

**C.    WHETHER, UNLIKE THE BANK, BARBARA CANNOT RELY ON FACTS FROM THE PRIOR CASE?**

      **Suggested Answer:** *Yes.*

## IV.    ARGUMENT

In deciding a motion for summary judgment, the Court is governed by Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that summary judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show no genuine issue as to any material fact. *Rode v. Dellarciprete*, 845 F.2d 1195, 1999 (3d Cir. 1988). Under Federal Rule of Evidence 302, "[i]n a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." Accordingly, burden of proof is to be determined by Pennsylvania law. *Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 732 (E.D. Pa. 2006). In Pennsylvania, and generally nationwide, the burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. *Zenner v. Goetz*, 188 A. 124 (Pa. 1936).

7777176.1

In a breach of contract claim, the plaintiff must sustain her burden by a preponderance of the evidence. *Snyder v. Gravell,* 666 A.2d 341, 343 (Pa. Super. 1995). To prevail on a breach of contract claim, a plaintiff must establish there was an agreement that the defendant breached, thereby causing damages to the plaintiff. *Matthews v. Unisource Worldwide, Inc.,* 748 A.2d 219, 221(Pa. Super. 2000). The defendant does not have the burden. *Arco Metalscraft Co. v. Shaw*, 70 A.2d 850, 853 (Pa. 1950).

As explained herein, Barbara has not met and cannot meet her burden for summary judgment let alone survive summary judgment herself. The material facts in this case establish that the Bank, not Barbara, is entitled to summary judgment.

## A.   BARBARA HAS FAILED TO ESTABLISH ANY CONTRACTUAL VIOLATION BY THE BANK.

Barbara has only one remaining count in this matter—breach of contract. She claims that the Bank breached the contract with her in four ways: (1) by allowing Junior to be added to the account, (2) by allowing Junior to change the address for the account; (3) by allowing Junior to deposit checks with forged signatures in the account, and (4) by allowing Junior to withdraw funds from the account. As outlined below, none of this conduct violated the Susquehanna Account Agreement in any way because all account records indicate that Junior was a joint account owner and titled on the account. Accordingly, he was entitled to change the account address and deposit/withdraw checks. Furthermore,

Barbara's allegations of mistitling are all moot as she failed to monitor statements revealing the titling and timely report any concerns to the Bank. Barbara may not simply argue without a basis that Junior was not a joint account owner and ignore the documentary evidence and her own admitted actions which conclusively require an opposite conclusion. This Court may not allow a breach of contract claim to proceed to trial where no provision of the contract has been identified as breached.

**1. Non-Account Specific Customer Agreements Replaced the Need for Account Specific Signature Cards.**

The underpinning of Barbara's case is that there is some missing joint account agreement that would have had Barbara, Senior and Junior's names on it the date the account was open January 21, 2015. Barbara's Motion, p. 9. However, the Bank has produced universal Susquehanna Account Agreements for each Barbara, Senior, and Junior. Statement at ¶¶ 6, 7, 10. These Agreements expressly state they would apply to all accounts and future accounts, like the 3114 Account, and not require individual signature cards for each account opening. Statement ¶ 14.

Barbara further suggests that because her universal Susquehanna Account Agreement only has her name on it, that somehow this Court must find that only she is the owner of the 3114 Account. However, Barbara's Susquehanna Account Agreement is explicit that it governs any "account*s* and services individually or

9

*jointly* with another person," like the joint 3114 Account with Senior and Junior.
Statement ¶ 14 (emphasis added). Accordingly, the Susquehanna Account
Agreement is not specific to the 3114 Account or any account. *Id.* ("'accounts'
when used in this Agreement includes various banking services and accounts made
available to you by us from time to time."). Neither does the Agreement have a
section for joint titling (only adding a fiduciary) as it is an agreement for only one
customer for all dealings with the Bank, not for a specific account. *Id.* Because the
universal Susquehanna Account Agreement is clearly non-account specific,
Barbara cannot argue that it supports her claim that Account 3114 was individually
titled to her. Therefore, her claim must fail.

### 2. Barbara's Position on Account Ownership Has Evolved.

During the course of this litigation, Barbara altered her original position that
only Junior was improperly named to the 3114 Account to now claim that her
husband, Senior was also improperly named. *Compare* Barbara's Motion, p. 8;
*with* Barbara's Second Amended Complaint, ¶ 29, ECF 32 (claiming only Junior
was improperly added as joint account owner). Remarkably, in the very affidavit
that Barbara attaches to her instant Motion, she concedes that account was owned
by her and her husband, Senior, in direct contradiction to the position she now
takes that the account was only hers. *See* Barbara's Motion, ECF 77-13, at Exhibit
F. This adaptation in opinion appears to have evolved as some attempt to avoid the

7777176.1

reality that the Bank has produced Susquehanna Account Agreements for all three joint owners and account statements that without exception confirm that the 3114 Account was jointly titled to Barbara, Senior, and Junior.

### 3. All Account Documents Indicate the 3114 Account was Joint Account.

All of the evidence produced in discovery supports that the 3114 Account was jointly titled to Barbara, Senior and Junior. All of the account statements and account records list the three as joint owners of the account. *See, e.g.*, Statement ¶ 13. The summary page for the 3114 account lists all three as joint owners, with Senior – not Barbara – listed as the principal account holder. *See* Account Summary, attached hereto as Exhibit B. Barbara cannot point to a single document that reflects titling to the 3114 Account as solely in her name. Because all account documents reflect joint ownership by Barbara, Senior, and Junior, each of them had the ability to make deposits, withdrawals, and change the address on account statements and the Bank violated no contractual obligation by allowing such actions to occur. There is no factual, of record evidence to suggest that the account was a single account in Barbara's name.  Moreover, even assuming there was – and there is not - Barbara failed to properly monitor the account and, therefore, the Bank, not Barbara is entitled to judgment as a matter of law.

### 4. Barbara Can Only Cite Broken "Expectations," Not Broken Contractual Obligations.

At her deposition, Barbara repeatedly stated that she "expected" the Bank would do certain things, such as requiring her signature on a check to deposit it in her account, but she was unable to point to any provision of the contract that was in accordance with her expectations. *See* Barbara Johnson Deposition Transcript, attached hereto as Exhibit C at 197:23-200:4.  Barbara's expectations do not form a contractually binding relationship and they are certainly not sufficient to meet her burden on a breach of contract case as required by Pennsylvania law.

First, the terms of the Susquehanna Account Agreement permitted any one joint owner to withdraw funds, as is common banking practice. Statement ¶ 15 ("Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs to open the account or had authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time."). The checks at issue in this case were withdrawn by a joint account holder. This was not a breach of the Agreement; in fact, it was the Bank's responsibility under the Agreement to comply with the direction of a joint account holder.

Second, the Agreement also permitted any owner to deposit a check in the account, whether signed or not, as long as it was made out to a joint account owner. Statement ¶ 15 ("We may accept for deposit any item payable to you or

your order, even if they are not indorsed by you."). Each of the at issue checks in this matter were made payable to Barbara and/or Senior, a joint account holder.

Third, nothing prevented Junior or any joint account owner from changing the mailing address for statements. Statement ¶ 15 ("You may request a change to the account…Changes may be made by any account holder or authorized signer."). Because Junior and Senior are identified as joint account holders, Barbara cannot identify any provisions of the contract that the Bank breached, so the Bank, not Barbara, is entitled to judgment as a matter of law.

### 5. Barbara Violated Her Contractual Obligations by Failing to Monitor Account Statements and Dispute Account Titling.

Unlike the universal Susquehanna Account Agreement, the documents that are specific to the 3114 Account are the account statements that Barbara concedes she had directed to an address where (1) she did not reside (2) she did not check the mail, and (3) and knew was controlled by Senior and Junior – the ones she now alleges were not titled on the account. Statement ¶ 22. The Susquehanna Account Agreement required Barbara to monitor these statements by mail, online, by visiting or by calling the branch, and to report any issues, like disputes over account titling, within 60 days of when the statement was issued.[4] Barbara's 60

---

[4] Barbara's failure to timely notify the Bank of any disputes related to the 3114 Account is raised in the Bank's Motion for Summary Judgment, along with her failure to even adhere to the one-year deadline under the UCC. *See* 13 Pa.C.S.A. § 4406(f).

7777176.1

day notification obligation is "without regard to whether [the Bank] used ordinary care." *Id.*

Courts have consistently enforced this contractual monitoring and notification requirement for the accountholder and just last month, the Third Circuit affirmed this Court's grant of summary judgment to the Bank under a substantially similar provision. *Binns v. BB & T Bank*, 377 F. Supp. 3d 487, 490 (E.D. Pa. 2019), *aff'd sub nom. Binns v. Truist Bank*, No. 19-2157, 2020 WL 1130639 (3d Cir. Mar. 9, 2020); *Seeger v. First Union Nat. Bank*, 836 A.2d 163, 166 (Pa. 2003) (holding that if the bank could provide that customer failed to provide timely notice of unauthorized withdraw under the contract terms, it would be relieved of all liability); *Compass Bank v. Calleja-Ahedo*, 569 S.W.3d 104, 108 (Tex. 2018) (even when customer alleged a fraudulent address change, customer still was barred from recovery against bank due to monitoring and notice obligation).

Similarly, the Pennsylvania UCC provides an absolute bar to accountholder recovery when the Bank is not notified within one (1) year of the statement disclosing a disputed item. 13 Pa.C.S.A. § 4406(f). Here, Plaintiff admits to failing to provide notice to the Bank until April 2017; over two years after statements were issued revealing joint titling and about 18 months after Barbara concedes she uncovered that the funds were depleted in September 2015. Statement ¶¶ 19, 23,

36, 38. This delay in notice serves as an absolute bar to recovery under either the 60 day contractual provision or the one year UCC provision.

Barbara's contractual statement monitoring obligation was the safeguard in place to prevent any titling disputes and Barbara neglected to use that safeguard, failing to notify the Bank for over two years after the statements reflecting the joint titling were issued and any transactions which she disputes occurred. Statement ¶ 38. Her failure to adhere to that obligation bars her from recovery from the Bank and entitles the Bank –not Barbara - to summary judgment.

### B.  BARBARA IS Collaterally ESTOPPED FROM RELITIGATING THE TITLING OF THE 3114 ACCOUNT AS A COURT HAS ALREADY HELD THAT IT WAS JOINTLY TITLED.

Collateral estoppel—sometimes called issue preclusion—bars re-litigation of an issue that has already been litigated to conclusion in a prior action. *See Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990). Under both prevailing Third Circuit precedent and Pennsylvania law, collateral estoppel applies if "(1) the identical issue was previously adjudicated, (2) the issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006); *accord Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005).

Similar to the collateral estoppel doctrine, the *Rooker-Feldman* doctrine bars a federal court action that essentially seeks to re-litigate a state court judgment for a different result. "A case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication." *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004) (citing *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004)). The *Rooker-Feldman* doctrine bars a claim if—in order to grant the plaintiff's requested relief—the court will be required to determine that the state court judgment was wrongly entered. *Id.* at 150.

Here, Barbara has previously litigated against Junior for the exact same loss she is seeking to recover here. There, the Chester County Orphans' Court held that Junior had joint title to the Bank Account. ¶ 13. Under both the principles of collateral estoppel and the *Rooker-Feldman* doctrine, Barbara cannot now relitigate this fact to reach a different decision before this Court. Indeed, this Court should take judicial notice of the fact that Junior is the joint owner of the 3114 Account. *See, e.g., Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir.1996) (holding that the court has a positive obligation to take judicial notice of relevant determinations in other courts, "both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue"); *Rodic v. Thistledown Racing Club, Inc.*,

615 F.2d 736, 738 (6th Cir.), cert. denied, 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d

294 (1980) (federal courts may take judicial notice of proceedings in other courts

of record) (citation omitted); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d

1169, 1172 (10th Cir.1979) (same).

Barbara is accordingly precluded from arguing that Junior was not a joint

owner of the 3114 Account. Indeed, Barbara's only claims are that the Bank should

not have permitted Junior to take certain actions, such as changing the statement

mailing address or making withdrawals from the account, when he was not a titled

account holder. These arguments fail as a matter of law because Barbara is

precluded from arguing that Junior is not a titled account owner. The Bank, not

Barbara, is therefore entitled to summary judgment.

### C.   UNLIKE THE Bank, BARBARA CANNOT RELY ON FACTS FROM THE PRIOR CASE.

In Barbara's Motion for Summary Judgment, she outlines several facts that

she contends are undisputed, based on factual findings made by Judge Tunnell in a

Chester County Orphans' Court Judgment, following a proceeding that the Bank

was not a party to. Specifically, Barbara wishes to use six facts from the decision

to support her claims: (1) that Junior deposited $509,110 into the 3114 Account,

(2) that Junior set aside in his personal account $318,000; (3) that most of the

endorsed checks did include Barbara's signature; (4) that Barbara never saw any of

the checks issued by her insurer; (5) that Junior's testimony was not credible; and

17

(6) that Junior kept $300,000 for himself and failed to account for an additional $200,000. To the extent these "facts" are even relevant to the instant Motions for Summary Judgment, they are not binding on the Bank.

Collateral estoppel applies only where "1) the issue decided in the prior case is identical to one presented in the latter case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privity to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment." *Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 304 (Pa. Super. 2017) (*quoting Westfield Ins. Co. v. Astra Foods Inc.*, 134 A.3d 1045, 1049–1050 (Pa. Super. 2016)), *appeal denied*, 158 A.3d 1226 (Pa. 2016)).

Here, Barbara's attempt to have Judge Tunnell's findings of fact deemed conclusive against the Bank plainly fails under the fourth and fifth elements—the Bank was not a party in the Chester County Orphans' Court proceeding, was not in privity with a party, and did not have any opportunity to litigate the matter. The doctrine of collateral estoppel requires a final judgment on the same issue together with the same party or parties in privity to them in the prior action. *Thompson v. Karastan Rug Mills*, 323 A.2d 341 (Pa. Super. 1974); *Intili v. Salak*, 589 A.2d 761,

764 (Pa. Super. 1991). It is undisputed that the Bank was not a party to the Chester County Orphans' Court action.

Similarly, it cannot be found that the Bank was in "privity" with Junior such that Barbara can utilize the doctrine of collateral estoppel. "Privity" in the context of collateral estoppel "is broadly defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Hillgartner v. Port Authority of Allegheny County*, 936 A.2d 131, 140 (Pa. Cmwlth. 2007). Junior and the Bank have no special relationship warranting a finding of privity. Accordingly, the Bank cannot be held to the factual findings in Judge Tunnell's decision. If Barbara had wanted to efficiently resolve these matters, she could have joined her claims against Junior and the Bank into one action. She may not, however, proceed to conclusion in a case against Junior, and affording the Bank no ability to defend itself, seek to hold it to the facts determined by a judge in a proceeding to which it was not a party.

## V.     CONCLUSION

In this matter, Plaintiff, Barbara Johnson, has brought a breach of contract claim against the Bank. She cannot, however, establish the necessary facts to support her cause of action at summary judgment, or even avoid the Bank's competing summary judgment motion. Moreover, she failed to comply with her

own contractual responsibilities to alert the Bank to any alleged unauthorized withdrawals under the Susquehanna Account Agreement and the UCC. Plaintiff cannot recover the funds her step-son allegedly misappropriated by pursuing the Bank, as the Bank fully complied with its contractual obligations to Plaintiff.

WHEREFORE Defendant Branch Banking and Trust Company, as successor to Susquehanna Bank, hereby requests this Honorable Court enter judgment in its favor and against Plaintiff.

BARLEY SNYDER

Dated: April 20, 2020          By:/s/Justin A. Tomevi
                         Robert J. Tribeck, Esquire
                         PA I.D. No. 74486
                         Justin A. Tomevi, Esquire
                         PA I.D. No. 313661
                         213 Market Street, 12th Floor
                         Harrisburg, PA 17101
                         rtribeck@barley.com
                         jtomevi@barley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2020, a true and correct copy of the foregoing document was served electronically on the following:

> Marvin J. Powell, Esq.
> Powell Law Associates, LLC
> 234 Kennedy Drive
> South Coatesville, PA 19320
> Attorney for Plaintiff
>
> Eugene A. Steger, Jr., Esquire
> Eugene Steger & Associates PC
> 411 Old Baltimore Pike
> Chadds Ford, PA 19317
> Attorney for Third-Party Defendant

I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system, and that parties may access this filing through the Court's system.

BARLEY SNYDER

By: /s/Justin A. Tomevi
    Robert J. Tribeck, Esquire
    PA I.D. No. 74486
    Justin A. Tomevi, Esquire
    PA I.D. No. 313661
    213 Market Street, 12th Floor
    Harrisburg, PA 17101
    rtribeck@barley.com
    jtomevi@barley.com

21

7777176.1