IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA JOHNSON, | |
| Plaintiff, | CIVIL ACTION NO.: 2:17-CV-04490-JCJ |
| v. | |
| BRANCH BANKING AND TRUST COMPANY, SUCCESSOR BY MERGER TO SUSQUEHANNA BANK, | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| RICHARD A. JOHNSON, JR. and VIRGINIA THOMAS | |
| Third-Party Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTIONS
*IN LIMINE* TO PRECLUDE CERTAIN EVIDENCE AT TRIAL**

## I.    INTRODUCTION

On New Year's Eve of 2014, two properties owned by Plaintiff Barbara Johnson ("Barbara") and her husband Richard Johnson, Sr. ("Senior") caught fire and suffered substantial damage. Barbara and Senior filed an insurance claim for

the damage. They also opened a bank account with Susquehanna Bank (the "Bank") to use for depositing the insurance funds and paying for the repairs for the properties (the "3114 Account").

Senior had one son from a prior relationship, Richard Johnson, Jr. ("Junior"). Prior to the 3114 Account being opened, Senior had designated Junior as his power of attorney for all of his accounts at the Bank. Both Senior and Junior had standing signature cards on file with the Bank. Moreover, Senior and Barbara added Junior as a titled owner of the 3114 Account when it was opened to handle the insurance funds. Shortly after the fire, Senior and Barbara transferred the damaged properties to Junior.

Barbara claims that Junior then took checks from the insurance company, deposited them in the account, then withdrew most of the funds. In total, the amount received from the insurer totals just over $500,000. Junior can account for approximately $300,000 in expenses he withdrew from the account, which went toward restoring the damaged properties.

After Senior passed away, Barbara sought to recover the money withdrawn by Junior, claiming she did not know he was an owner on the account, and he did not have the authority to deposit or spend the money in the account. Ultimately, Barbara brought a case in the Chester County Orphans' Court against Junior for conversion, and obtained a judgment against Junior for the $200,000 he could not

account for (the "Orphans' Court Judgment"). A true and correct copy of the Orphans' Court Judgment is attached hereto as Exhibit A. This decision was not appealed.

Barbara also brought another action against Junior and his wife, Victoria Thomas seeking recovery of the same funds in the Court of Common Pleas for Chester County Pennsylvania. She obtained a default judgment against them for $608,871.05 (the "Common Pleas Judgment"). A true and correct copy of the Superior Court Decision affirming the Common Pleas Judgment is attached hereto as Exhibit B. So far, she has recovered $21,883.21 from Junior. A true and correct copy of correspondence arranging delivery of payment from Junior to Barbara is attached hereto as Exhibit C.

Unsatisfied, she has now brought this matter against the Bank, claiming that it breached its contract with her in various ways, including by allowing Junior to be a titled owner on the account. At her deposition, Barbara could not identify any specific provision of the contract that was violated, but instead simply maintained that the Bank acted differently than she has expected based on prior experiences with banks.

At the upcoming trial, the Bank anticipates that Barbara will attempt to enter into evidence certain facts, documents, and testimony that are inadmissible. Accordingly, the Bank brings these Motions, seeking the following pre-trial orders

that (1) any recovery by Barbara Johnson must be reduced by $808,871.05, the amount she has already obtained a judgment for against Junior and Victoria Thomas; (2) alternatively any recovery of Barbara Johnson must be reduced by $21,883.21, the amount she has already recovered from Junior, (3) any factual determinations from the Orphans' Court Judgment may not be entered into evidence against the Bank, (4) Barbara Johnson should be estopped from presenting any argument or evidence that Junior was not a joint account holder on the 3114 Account, (5) Barbara Johnson should be barred from offering Wade Myers, Esquire as a witness, (6) Barbara Johnson should be estopped from seeking a cost of living adjustment in her requested damages, and (7) Barbara Johnson should be prevented from introducing any internal policies of the Bank at trial. This Memorandum of Law is submitted in support of the Bank's Motion.

## II.     ARGUMENT

### a.  BARBARA JOHNSON'S RECOVERY IN THIS MATTER SHOULD BE REDUCED BY $808,871.05.

Plaintiff Barbara Johnson has brought only one claim against the Bank— breach of contract. The parties' relationship is governed by the Deposit Account Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit D. Pursuant to the Agreement, in the event of a loss "[b]ecause of a forgery, alteration, or any other unauthorized withdrawal," Barbara agreed to pursue her rights against the culpable party. She further agreed that the

Bank's "**liability will be reduced by the amount you recover or are entitled to recover from these other sources.**" Exhibit D at 12. Accordingly, because Barbara is entitled to recover $200,000 from Junior by virtue of the Orphans' Court judgment, and $608,871.05 from Junior and Victoria Thomas as a result of the Common Pleas judgment, any amount ultimately found to be the responsibility of BB&T must be reduced by $808,871.05, plus applicable interest, by the plain language of the Agreement.

"[A] court may not disregard a provision in a contract if a reasonable meaning may be ascertained therefrom." *Marcinak v. Southeastern Greene School District*, 544 A.2d 1025, 1027 (Pa. Super. 1988). "[I]n construing a contract, each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Id*. "[T]he intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Village Beer & Beverage, Inc. v. Vernon D. Cox, Inc.*, 475 A.2d 117, 121 (Pa. Super. 1984).

The Agreement in question here is abundantly clear. Barbara Johnson and the Bank contractually agreed that in the event a third party made an unauthorized withdraw from the 3114 Account, Barbara was precluded from recovering from the

Bank for any amounts she was "entitled to recover" from third parties. It is undisputed here that Barbara is "entitled to recover" $808,871.05, plus applicable interest, from Junior and Victoria Thomas. *See* <u>Exhibits A and B</u>. Accordingly, any liability of the Bank must be offset by this prior judgment.

Indeed, any evidence of damages up to $808,871.05 would be irrelevant. *See* F.R.E. 401 (evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and if the fact is of consequence in determining the action). The Bank may only be liable for Plaintiff's damages, if any, that are above those she is "entitled to recover from these other sources." Evidence of this $808,871.05 would serve only to confuse the jury. Either all evidence of this first $808,871.05 in claimed damages should be excluded at trial, or any ultimate judgment against the Bank must be reduced by $808,871.05, plus applicable interest.

b. ALTERNATIVELY, BARBARA JOHNSON'S RECOVERY IN THIS MATTER SHOULD BE REDUCED BY $21,883.21.

Junior has actually reimbursed Barbara Johnson for $21,883.21of the money he allegedly withdrew from the 3114 Account. *See* <u>Exhibit C</u>. Nevertheless, Barbara is seeking a second recovery of this $21,883.21 from the Bank. "While it is a fundamental rule of damages that a person injured by the tortious act of another is entitled to compensation, a court will not allow that person more than one satisfaction in damages. An injured party cannot recover twice for the same

injury." *Rossi v. State Farm Auto. Ins. Co.*, 465 A.2d 8, 10 (Pa. Super. 1983) (internal citations omitted). This rule applies equally to situations where the injured party legally has another claim for the same loss; the purpose of this rule of damages in any context is to avoid unjust enrichment. *Id*.

The Bank maintains that it is not liable to Barbara for breach of contract, as it fully complied with its obligations to her. Nevertheless, in the event the jury finds the Bank to be liable, Barbara may not receive a double recovery for a single harm. She certainly cannot recover this $21,883.21 when she has already been reimbursed by Junior for the loss.

c. THE CHESTER COUNTY ORPHANS' COURT FACTUAL DETERMINATIONS SHOULD BE EXCLUDED FROM EVIDENCE BECAUSE THE BANK WAS NOT A PARTY TO THAT LITIGATION AND ITS FINDINGS ARE HEARSAY.

In Plaintiff's Motion for Summary Judgment, she outlined several facts that she contended were undisputed, based on factual findings made by Judge Tunnell in the Orphans' Court Judgment, following a proceeding that the Bank was not a party to. Specifically, Barbara wishes to use six facts from the decision to support her claims: (1) that Junior deposited $509,110 into the 3114 Account, (2) that Junior set aside in his personal account $318,000; (3) that most of the endorsed checks did include Plaintiff's signature; (4) that Plaintiff never saw any of the checks issued by her insurer; (5) that Junior's testimony was not credible; and (6) that Junior kept $300,000 for himself and failed to account for an additional

$200,000. To the extent these "facts" are even included in Judge Tunnell's decision, they are not binding on the Bank, and they cannot be admitted into evidence under hearsay rules.

      i.    <u>Collateral Estoppel Does Not Bind The Bank To The Factual Determinations in the Orphans' Court Judgment.</u>

Collateral estoppel applies only where "1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privity to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment." *Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 304 (Pa. Super. 2017) (quoting *Westfield Ins. Co. v. Astra Foods Inc.*, 134 A.3d 1045, 1049–1050 (Pa. Super. 2016) ), *appeal denied*, 158 A.3d 1226 (Pa. 2016).

Here, Plaintiff's attempt to have Judge Tunnell's findings of fact deemed conclusive against the Bank plainly fails under the fourth and fifth elements—the Bank was not a party in the Chester County Orphans' Court proceeding, was not in privity with a party, and did not have any opportunity to litigate the matter. The doctrine of collateral estoppel requires a final judgment on the same issue together with the same party or parties in privity to them in the prior action. *Thompson v. Karastan Rug Mills*, 323 A.2d 341 (Pa. Super. 1974); *Intili v. Salak*, 589 A.2d 761,

764 (Pa. Super. 1991). It is undisputed that the Bank was not a party to the Chester County Orphans' Court action.

Similarly, it cannot be found that the Bank was in "privity" with Junior such that Plaintiff can utilize the doctrine of collateral estoppel. "Privity" in the context of collateral estoppel "is broadly defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Hillgartner v. Port Authority of Allegheny County*, 936 A.2d 131, 140 (Pa. Cmwlth. 2007). Junior and the Bank have no special relationship warranting a finding of privity. Accordingly, the Bank cannot be held to the factual findings in Judge Tunnell's decision. If Barbara had wanted to efficiently resolve these matters, she could have joined her claims against Junior and the Bank into one action. She may not, however, proceed to conclusion in a case against Junior, and affording the Bank no ability to defend itself, seek to hold it to the facts determined by a judge in a proceeding to which it was not a party.

    ii.    <u>The Orphans' Court Judgment Should Be Excluded From Evidence Because It Is Hearsay and Unfairly Prejudicial.</u>

Not only may the Bank not be bound to the factual findings, these findings may not even be admitted into evidence. Any factual finding by Judge Tunnell in the Orphans' Court judgment is hearsay. It is a statement made outside this court and would be offered for the truth of the matter asserted. *See* F.R.E. 801. Judicial

findings in other cases proffered as evidence are generally characterized as inadmissible hearsay. *See, e.g.,* McCormick on Evidence § 318, at p. 894 (3d ed.1984). No specific exceptions apply under the Federal Rules of Evidence. See F.R.E. 803 (listing specific exceptions); *see also, e.g., United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir.1994) (finding judicially determined facts were not admissible under exception for government documents under Rule 803(8)(C)); *Zenith Radio Corp v. Matsushita Elec. Indus. Co.*, 505 F.Supp. 1125, 1185 (E.D.Pa.1980) ("[A] review of the advisory committee note makes it clear that judicial findings are not encompassed [in Rule 803(8)(C)]; not only is there not the remotest reference to judicial findings, but there is a specific reference on the findings of officials and agencies within the executive branch.").

Indeed, as noted by this Court in *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa. 1980), not only would admission of judicial findings of fact be hearsay, they would also run afoul of Federal Rule of Evidence 605, which makes the judge an incompetent witness. The Rules require that untrustworthy hearsay not be admitted, and "the process of determining trustworthiness, either in limine or by way of defense at trial (if a preliminary determination of trustworthiness were made), cognizes the possibility of calling the author of the fact-finding, or his staff members, as witnesses so as to impeach their work. That just cannot be done under the F.R.E. with respect to a judge." *Id.*

Furthermore, even if these factual findings were not hearsay, they would nevertheless be properly excluded under F.R.E. 403, as they would certainly be unfairly prejudicial to the Bank and confusing to the jury. "This is because such findings would present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Id*.; *see also Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (excluding judicial findings under F.R.E. 403). A jury will surely see judicial factual findings as determinative of that fact, even though the Bank had no opportunity to litigate those facts in the Orphans' Court matter.

Plaintiff cannot admit evidence of Judge Tunnell's factual findings in a prior matter which the Bank was not a party to. The Bank is not bound to these findings under collateral estoppel, and the findings are not otherwise admissible under the Federal Rules of Evidence. The Plaintiff is not permitted to admit hearsay evidence at trial to unfairly prejudice the Bank, when the Bank did not have any ability to participate in the prior litigation and will have no opportunity to cross examine Judge Tunnell. Plaintiff may not present this evidence at trial.

    d.  PLAINTIFF SHOULD BE COLLATERALLY ESTOPPED FROM ARGUING OR PRESENTING EVIDENCE THAT JUNIOR WAS NOT A TITLED OWNER ON THE 3114 ACCOUNT.

On the other hand, collateral estoppel *does* apply to factual determinations rendered against Plaintiff in the Orphans' Court Judgment. "Collateral estoppel

may be used as either a sword or a shield by a stranger to the [prior] action, as long as the party against whom the defense is invoked is the same." *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1319 (Pa. Super. 1983). Judge Tunnell determined in the Chester County Oprhans' Court Judgment that Junior was a joint account holder with Plaintiff and Senior for the 3114 account. Barbara Johnson is not permitted to relitigate this issue.

All five elements of collateral estoppel are present. First, the issue decided in the prior case is identical to the one here. Below, Barbara Johnson attempted to argue that Junior did not have the right to access the 3114 Account. The Court determined this fact against her, explicitly finding that Junior was a joint account owner. Now, Barbara seeks to relitigate that same issue that was already decided against her once, and she intends to ask the jury to find that Junior was not a joint account holder. This is impermissible.

Second, there was clearly a final judgment on the merits. The Orphans' Court matter concluded following a full trial with a lengthy written opinion. This was not appealed. Third, the party against whom the doctrine is being invoked was a party to the prior action—Barbara Johnson—was a party in the Orphans' Court matter.

Fourth, Barbara had a full and fair opportunity to litigate this issue below. There was complete discovery and a full bench trial. She had the same motivations

to fully litigate the title to the account previously, as she does now. <u>Fifth</u>, the prior determination was essential to the judgment. Indeed, Judge Tunnell found Junior to be liable for only $200,000, which was the amount he could not account had been spent on the damaged properties. If the Court had not found that Junior was a titled owner on the 3114 Account, he would have been liable in conversion for all funds, as he would have not been authorized to make the withdrawals at all. The finding that he was a jointly titled account holder was essential to the judgment.

Accordingly, Barbara Johnson is now collaterally estopped from pursuing a second action against the Bank and seeking a different determination than she already received in earlier litigation. "[C]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). These principals will be served by precluding Plaintiff from relitigating whether Junior is a titled account owner for the 3114 Account.

e. PLAINTIFF SHOULD BE BARRED FROM CALLING WADE MYERS, ESQUIRE AS A WITNESS.

The first time that Wade Myers, Esquire was ever listed as a witness in this matter was on April 17, 2020, one business day before the joint pre-trial memorandums were due and well after the discovery period had concluded. During the course of discovery, the Bank requested a list of all witnesses that Plaintiff

intended to call at trial and not once did the name Wade Myers, Esquire appear. *See* Bank's Discovery Requests, attached hereto as Exhibit E. Nor was this witness ever identified outside of written discovery responses as an intended witness or even a potential witness. The Bank has no knowledge or information regarding what Wade Myers, Esquire played in any of the facts here, has not had an opportunity to conduct written discovery or a deposition of this witness. Accordingly, Plaintiff should not be entitled to submit a witness that has never been identified.

      f.   PLAINTIFF SHOULD BE ESTOPPED FROM SEEKING A COST OF LIVING ADJUSTMENT IN HER REQUESTED DAMAGES.

Based on Plaintiff's Pre-trial Memorandum, Plaintiff intends to seek a three percent cost of living adjustment increase to her requested damages. After a search of Pennsylvania and Third Circuit cases, Defendant cannot locate any authority for Plaintiff's effort to obtain a cost of living adjustment increase for damages in a breach of contract claim. Nor can Plaintiff cite any case law, contractual provision or other authority for such adjustment. Accordingly, Plaintiff's attempt to request a cost of living adjustment should be barred.

      g.   BARBARA JOHNSON SHOULD BE PREVENTED FROM INTRODUCING ANY INTERNAL POLICIES OF THE BANK AT TRIAL.

It is anticipated that Barbara will claim that the Bank violated internal policies in opening the 3114 Account given that she has listed one of the internal

policies as a trial exhibit. *See* Plaintiff's Trial Exhibit List, Exhibit 39, attached hereto as Exhibit F. However, the Bank's internal company policies do not create any contractual obligations between Barbara and the Bank.  Therefore, whether or not the Bank complied with its internal guidance and policies is irrelevant to the issue of whether the Bank breached a contract with Barbara.

The Pennsylvania Supreme Court has clearly articulated that the adoption of internal company policies does not create a contractual duty to those potentially benefitting from the policies.  *Morosetti v. Louisiana Land and Exploration Co.*, 564 A.2d 151, 153 (Pa. 1989).  Specifically, internal company policies do not become binding contract terms unless they are communicated as part of the agreed upon offer.  *Id.; Lutheran v. Loral Fairchild Corp.*, 688 A.2d 211, 216 n.3 (Pa. Super. 1997) ("A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer [of the contract] they are free to change as events may require."); *see also Enslin v. Coca-Cola Co.*, 2017 WL 3727033, at *8 (E.D. Pa. 2017, aff'd, 739 F. App'x 91 (3d Cir. 2018) (employee non-compliance with company policies contained in employee handbook did not create contract liability to potential beneficiaries of the policies); *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830, 837 (Pa. Super. 1986); *Bernstein v. Commonwealth*, 617 A.2d 55, 61 (Pa. Cmwlth. 1992) (absent evidence the policy was communicated as part of the

offer, the benefits provided under a company policy are unenforceable as a contract).

The Bank's internal company policies were not provided to Barbara prior to entering into any contract, nor are the policies incorporated into the contracts. Therefore, the Bank's internal company policies are not part of the Agreement nor are they enforceable as contract terms.

Moreover, where a customer is unaware of an internal company policy at the time of entering into the agreement and does not learn of those policies until the course of litigation, the customer could not possibly have relied on representations of the internal company policy, and therefore, there is no basis to enforce the policy as contract term. *Solomon v. U.S. Health Care Sys. of Penna., Inc.*, 62 Pa. D. & C.4th 104, 117-18, 2001 WL 34149359, (Pa. C.C.P. Phila. 2001); *aff'd sub nom.* 797 A.2d 346 (Pa. Super. 2002).

Jurisdictions across the nation have recognized that internal bank policies do not impose or define a specific duty in the financial services industry.  In *Schaller*, the Wisconsin Appellate Court held that when a bank maintains an internal company policy to respond in a particular way to [a particular type of transaction], no duty is created to follow such policies in the absence of facts establishing a contract or estoppel. *Schaller v. Marine Nat. Bank of Neenah*, 388 N.W.2d 645, 649 (Wis. App. 1986); *see also Lincoln Nat'l Bank & Trust Co. v. Peoples Trust*

*Bank*, 379 N.E.2d 527, 529–30 (Ind. App. 1978); *Cont'l Bank v. Fitting*, 559 P.2d 218, 220 (Az. App.1977).  Similarly, in 2010, in *Silverman Partners, L.P.*, it was observed that unlike statutes that may be used to define the standard of care, a bank's internal company policies are intended to protect the bank and the public generally, and they cannot be used to form the basis of an action by a customer. *Silverman Partners, L.P. v. First Bank*, 687 F. Supp.2d 269, 282 (E.D. N.Y. 2010); *see also Gardner v. MGC Mortg., Inc*., 2013 WL 800741 (M.D. Ala. 2013) (internal company policies do not create a legally enforceable duty on financial institution).

The Bank's internal company policies were not incorporated into the Susquehanna Account Agreement, and Barbara had no knowledge of the internal company policies until discovery in this litigation. Barbara cannot now attempt to assert that the policies impose a contractual obligation or duty on the Bank in favor of Barbara. The internal company policies should not be permitted as evidence at trial as they do not impose any enforceable obligation on the Bank.

## III.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Honorable Court grant their Motions *in Limine* and preclude Plaintiff from introducing evidence as described herein.

Respectfully Submitted,

By: /s/Justin A. Tomevi
    Robert J. Tribeck, Esquire
    PA I.D. No. 74486
    Justin A. Tomevi, Esquire
    PA I.D. No. 313661
    213 Market Street, 12th Floor
    Harrisburg, PA 17101
    rtribeck@barley.com
    jtomevi@barley.com
    (717) 852-4977
    *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 20, 2020, a true and correct copy of the foregoing document was served electronically on the following:

> Marvin J. Powell, Esq.
> Powell Law Associates, LLC
> 234 Kennedy Drive
> South Coatesville, PA 19320
> *Attorney for Plaintiff*
>
> Eugene A. Steger, Jr., Esquire
> Eugene Steger & Associates PC
> 411 Old Baltimore Pike
> Chadds Ford, PA 19317
> *Attorney for Third-Party Defendants*

I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system, and that parties may access this filing through the Court's system.

/s/Justin A. Tomevi_____