# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARBARA JOHNSON,

        Plaintiff,           CIVIL ACTION NO.: 2:17-CV-04490-JCJ

       V.

BRANCH BANKING AND
TRUST COMPANY,
SUCCESSOR BY MERGER TO
SUSQUEHANNA BANK,

        Defendant/Third-
        Party Plaintiff,

       V.

RICHARD A. JOHNSON, JR. and
VIRGINIA THOMAS

        Third-Party Defendants.

## JOINT PRETRIAL MEMORANDUM PURSUANT TO LOCAL RULE OF CIVIL PROCEDURE 16.1(c)

NOW COMES Plaintiff Barbara Johnson; Defendant Branch Banking and Trust

Company, Successor by merger to Susquehanna Bank[1] (the "Bank"); and third-party

---

[1] Branch Banking and Trust Company is now Truist Bank. The parties have stipulated to a caption change to reflect this change that will be presented to the Court.

1

Defendants Richard A. Johnson, Jr. and Virginia Thomas, by and through their undersigned counsel, and hereby file this Joint Pretrial Memorandum stating as follows[2]:

### (1).   <u>BRIEF STATEMENT OF THE NATURE OF THE ACTION AND BASIS OF JURISDICTION OF THE COURT</u>

On September 8, 2017 Plaintiff Barbara Johnson filed Complaint No. 17-08699-TT against the Bank in the Court of Common Pleas of Chester County Pennsylvania, for negligence and breach of contract for her $509,110.00 loss.

On October 6, 2017 the Bank removed case to U.S District under 28 U.S.C. 1441(a) and 1446(a) and 28 U.S.C. 1332(a), giving the district court jurisdiction due to fact  the amount in controversy exceeded $75,000 and there was diversity of citizenship between Plaintiff and Defendant  Bank. On December 27, 2017, Plaintiff filed a First Amended Complaint, again alleging negligence and breach of contract. On April 10, 2018, Plaintiff filed the Second Amended Complaint, alleging only breach of contract. The Bank filed a third party complaint against Third Party Defendant Richard Johnson, Jr. on July 27, 2018 raising claims for, *inter alia*, contribution and indemnity.

---

[2] Due to the COVID-19 Pandemic, the EDPA has postponed the May trial in this matter to a future date. The April 20, 2020 deadline for submission of this memorandum was set as a date certain in the February 6, 2020 scheduling order. The parties anticipate that the Court may adjust this deadline and requested clarification of the same in a joint letter submitted April 18, 2020. The parties request the right to supplement or refile this memorandum prior to the rescheduled trial if agreeable to this Court.

**(2)**.   **BRIEF STATEMENT OF THE FACTS IN THE CASE**

**(a).   Plaintiff's Statement of Facts**

At issue in the current case before this Court is where is Defendant's proof that a joint checking account existed between the three (3) Johnsons', Plaintiff Barbara Johnson, deceased husband Richard A. Johnson Sr., and stepson Richard A. Johnson Jr between January 2015 and September 2015.

(i). The facts relevant to this matter and supported by evidence and testimony introduced at trial in the Orphans Court matter are contained in Judge Tunnell's Opinion, are categorized as follows:

1. That Richard A. Johnson Jr. Deposited $509,110.00 in Decedent and Plaintiff's Susquehanna Bank/BB&T account.

2. That Richard A. Johnson Jr. set aside in his personal account, $300,000.00 and an additional $18,000.00.

3. That most, if not all of the endorsed checks, did not contain the signature of Plaintiff.

4. That Plaintiff never saw any of the checks issued by Lititz.

5. That Richard A. Johnson Jr's testimony that he did not know who signed Plaintiffs check was not "credible".

6. That Richard A. Johnson Jr. kept $300,000.00 for himself and failed to account for an additional $200,000.00

(ii) . On January 21, 2015 Plaintiff entered into a bilateral contract with Defendant to open a checking account for sole purpose of depositing insurance proceeds resulting from a fire at her residence on New Year's Eve of 2014.

(iii). At the time Plaintiff opened her account on January 21, 2015, she was an individual account holder/owner under customer/deposit agreement.

(iv). As an existing account holder, Defendant needed Plaintiff's consent/authorization as a condition precedent, before Defendant could add anyone to Plaintiff's existing checking account.

(v). Without Plaintiff's consent/authorization Defendant placed two unauthorized users on Plaintiff's personal checking account i.e., Richard A. Johnson, Sr., and her stepson Richard A. Johnson, Jr.

(vi). Without Plaintiff's consent/authorization Defendant created a joint checking account with Plaintiff's late husband Richard A. Johnson, Sr., and her stepson Richard A. Johnson, Jr. when both were added to her individual checking account.

(vii). Without Plaintiff's consent/authorization Defendant allowed non-account holder Richard A. Johnson, Jr., to deposit fraudulently endorsed insurance procced

checks made payable to Plaintiff and her now deceased husband into Plaintiff's personal checking account.

(viii) Without Plaintiff's consent/authorization Defendant allowed non-account holder Richard A. Johnson, Jr., to withdraw the insurance proceeds checks totaling $509,110.00 from Plaintiff's checking account.

(ix). Without Plaintiff's consent/authorization Defendant allowed Richard A. Johnson, Jr., a non-account holder to change the address for mailing the monthly bank statements on Plaintiff's checking account from 321 Pemberton Road Kennett Square, Pennsylvania to his personal home address at 519 School House Road Kennett Square, Pennsylvania.

(x)  Defendant breached of customer/deposit agreements caused Plaintiff to suffer damages in the amount of $509,110.03, attorney fees, pre-judgment and post-judgment interest and emotional distress.

**(b).   Defendant's Statement of Facts**

Plaintiff, Barbara Johnson ("Barbara") and Richard Johnson, Sr. ("Senior") were married or living together for thirty years as of 2014. On New Year's Eve of 2014, two properties they owned—200 and 202 East Linden Street—caught fire and suffered substantial damage. Accordingly, Barbara and Senior filed an insurance claim

for the damage. Senior opened a bank account with the Bank to handle all payments

for repairs and renovations to the property and to deposit the insurance payments.

Senior had a preexisting bank account with the Bank, so he was not required to

sign a new customer agreement when opening the account. The Account Agreement

between the Bank and Senior stated "[t]his Agreement is designed to eliminate most

signature cards and written authorizations when opening future accounts." Senior also

gave his son Richard A. Johnson, Junior ("Junior") a power of attorney over all of his

accounts at the Bank. Junior's Account Agreement likewise eliminated the need for

signature cards on future accounts.

Senior had his son Junior added to the 3114 Account, so he was a joint account

holder along with Barbara. Barbara claims she was not aware of this. In any event, the

bank statements beginning in February 2015 name Junior, Senior and Barbara as joint

account holders. However, because the fire destroyed their home, Barbara and Senior

instructed all bank statements be sent to 321 Pemberton Road, Kennett Square,

Pennsylvania. Despite Barbara listing this address, it is a vacant property that Barbara

did not own nor monitor. Barbara never reviewed the bank statements for the account,

nor did she review her statements online or call in to the Bank to ascertain the status of

the account. Each of these bank statements included the names of Barbara, Senior and

Junior as joint account owners. Barbara also agrees that had she seen Junior's name on the 3114 Account statements.

Barbara recalls receiving and signing several checks from the insurer for the fire loss for deposit in the 3114 Account. She agrees that Senior was authorized to deposit the checks into the 3114 Account. She was also aware that Junior had power of attorney for Senior at the Bank. Moreover, the Susquehanna Account Agreement signed by Barbara specifically indicated that "[w]e may accept for deposit any item payable to you or your order, even if they are not indorsed by you."

Over the course of the following six months, just over $500,000 in insurance checks were deposited and withdrawn from the 3114 Account. Although bank statements showing these withdrawals were sent to the address Barbara herself provided, she claims she did not look at the bank statements and left that to her husband, Senior.

Richard Sr. passed away in September 2015. Following his death, Barbara learned that there were only "pennies" left in the 3114 Account by calling in to the Bank to inquire of the balance. She did not raise any complaint to the Bank at that time or in any way alert the Bank to any dispute with the titling of Account 3114 or any transaction. The first notice she gave to the Bank of any claimed fraud was on April 6, 2017, at least 18 months if not more than two years after (1) a statement was

sent that showed the account was titled to Senior, Junior, and Barbara, (2) transactions occurred that Barbara now disputes, and (3) Barbara concedes she discovered the alleged fraud.

The relationship between the Bank and Barbara is governed by the Susquehanna Account Agreement. Pursuant to the Susquehanna Account Agreement, Barbara was obligated to promptly review her statements no later than thirty days after they were issued and then report any disputes on those statements no later than sixty days after issuance.

### (3).   **PLAINTIFF'S LIST OF CLAIMED TOTAL MONETARY DAMAGE**

Total Insurance Proceeds…$509,110.39 plus 6% compound interest since date of complaint September 8, 2017 and 3% inflation for 3 years.

| | |
|---|---|
| **End Balance** | **$606,358.16** |
| After Inflation 3% Adjustment | $554,903.61 |
| Total Principal | $509,110.00 |
| Total Interest | $97,248.16 |

Plus:

Cost…………………………………………..$33,000.00

Total Monetary Damages…………………………………………...$672,358.16

### (4).   **LIST OF WITNESSES**

#### (a).   **Plaintiff's witnesses**

a. Plaintiff, Barbara Johnson

8

b. Richard A. Johnson, Jr.(Represented by Eugene Steger, Jr., Esquire)

c. Victoria Thomas (Represented by Eugene Steger, Jr., Esquire)

d. Wade Myers,  Esquire, 18 W. Market Street, West Chester, PA 19382

    **(b).   Defendant's witnesses**

a.  Richard A. Johnson, Jr., 317 Pennsylvania Avenue, Avondale, PA 19311

b.  Barbara Johnson, 53 Pennsylvania Avenue, Coatesville, PA 19320

c.  James J. Krieg (as expert witness for the Bank), 15 Randolph Drive

    Robbinsville, New Jersey 08691

d.  Mike Paules, 5209 Militia Hill Rd, Plymouth Meeting, PA 19462

e.  Defendant reserves the right to supplement its witnesses prior to or at the trial
of trial for the purposes of rebuttal, impeachment, or otherwise. Defendant
further reserves the right to call any witnesses identified by Plaintiff.

**(5).   EXHIBITS EXPECTED TO BE OFFERED INTO EVIDENCE**

    **(a).   Plaintiff's exhibits**

See Attached EXHIBIT – A

    **(b).   Defendant's exhibits**

See Attached EXHIBIT - B

**(6).   ESTIMATE OF NUMBER OF DAYS FOR TRIAL**

Five (5) days.

## (7) <u>PLAINTIFF'S OBJECTIONS TO BB&T EXPERT REPORT[3]</u>

Plaintiff objects to Mr. Kreig 's conclusion of law that BB&T acted with "ordinary care and consistent with reasonable commercial standards"… in regard "to deposit of (fraudulently endorsed) of insurance checks naming Plaintiff's as payee".(Expert Conclusion No. 3 page 23).

Mr. Kreig usurps the Court's prerogative to set forth the law applicable to the facts yet to be presented at trial. It is clear Mr. Kreig's opinion is to direct the jury's understanding of the legal standards upon which their verdict must be based. *Anderson v. Suiters,* 499 F.3d 1228, 1237 (10th Cir. 2007):

An expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.

In no instance can a witness be permitted to define the law of the case.  *United States v. Bedford,* 536 F.3d 1148, 1158 (10th Cir. 2008) (expert "may not state  legal conclusions drawn by applying the law to the facts") (citation and internal quotation marks omitted), ***cert. denied*** , 555 U.S. 1191, 129 S.Ct. 1359, 173 L.Ed.2d 620 (2009); *Anderson v. Suiters,* 499 F.3d 1228, 1237 (10th Cir. 2007) ("[W]hile expert witnesses may testify as to the ultimate matter at issue ... this refers to testimony on ultimate facts:

---

[3] The Bank objects to Plaintiff's effort to submit what amounts to a *Daubert* motion at this time. Per this Court's February 6, 2020 scheduling order, all *Daubert* motions were due April 6, 2020 and none were filed by Plaintiff. The Bank intends to submit a Motion to Strike these Objections.

testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored.").

Plaintiff objects to:

(1) all legal conclusions contained in Mr. Kreig's Report …such as page 11, line 3-4…a forged check is not properly payable"….;

(2) Mr. Kreig's application of the common law, statutory law, the uniform commercial code, the Pennsylvania Multiple Party Deposit Account Act, general banking practices of the Commonwealth…; and,

(3) all instances wherein Mr. Kreig defines any legal terms, draws any conclusion or opinion, preforms any legal analysis or conclusion regarding any of the following:

   (a).   13 Pa.C.S.A. § 3104(f), page 10;

   (b).   13 Pa.C.S.A. § 1201(b)(41), page 11;

   (c).   20 Pa.C.S.A. § 6303 et seq., page 13, 14;

   (d).   13 Pa.C.S.A. §§ 4207 and 4208, page 16;

   (e).   13 Pa.C.S.A. § 4207(a)(2), page 16;

   (f).   13 Pa.C.S.A. § 4205, page 19; and,

   (g).   13 Pa.C.S.A. § 4406(f) page 24.

Rule 702 only requires that an expert possess knowledge, skill, experience, training, or education' sufficient to assist' the trier of fact, which is satisfied where expert testimony advances    the    trier    of    fact's    understanding    to    any

degree.'" *Robinson v. Geico Gen. Ins. Co*., 447 F.3d 1096, 1100 (8th Cir. 2006) (emphasis added) (internal quotation marks omitted).

Mr. Freig Report will not assist the trier of facts in reaching a verdict.  Mr. Kreig has over-stepped his boundary as an expert.  His legal analysis is an attempt on his part to make his legal opinion <u>evidence</u> for the jury to consider during its deliberation of this case.

Wherefore Plaintiff request that this Court limit Mr. Kreig's expert opinion to a factual analysis of the issues in the current case and not to his legal conclusion regarding how the facts relate to the law.

## (7). <u>STIPULATED FACTS</u>

(a).    On January 21, 2015, Barbara Johnson signed a customer agreement, and deposit agreement with Defendant.

(b) On January 21, 2015, Account No. 10014673114 was opened.

(b).    On January 21, 2015, Barbara Johnson signed a customer agreement, and deposit agreement with Defendant, having a mailing address of 321 Pemberton Road, Kennett Square, PA 19348-2909, for the monthly bank statements.

(c).    The Monthly Bank Statement dated February 17, 2015, for Account No. 10014673114, had the following names: Richard A. Johnson, Sr., Barbara Johnson, and Richard A. Johnson, Jr.

(d).    On the Monthly Bank Statement dated June 11, 2015 for Account No. 10014673114, the mailing address for the monthly statements was changed from 321 Pemberton Road, Kennett Square, PA 19348-2909, to 519 School House Road, Kennett Square, PA 19348-2909.

(e).    The first notice Barbara gave to the Bank of any claimed fraud was on April 6, 2017.

Respectfully Submitted,


s/Marvin J. Powell, Esquire
POWELL LAW ASSOCIATES, LLC
PA. ID No. 38129
234 Kennedy Drive
South Coatesville 19320-3969
(610) 489-1714(office)
Email: powelllawassociates@fast.net
Attorney for Plaintiff, Barbara Johnson


/s/Eugene A. Steger, Jr.
Eugene A. Steger, Jr., Esquire
Eugene Steger & Associates PC
411 Old Baltimore Pike
Chadds Ford, PA 19317
*Attorney for Third-Party Defendant*

/s/Justin A. Tomevi
Robert J. Tribeck, Esquire
PA I.D. No. 74486
Justin A. Tomevi, Esquire
PA I.D. No. 313661
213 Market Street, 12th Floor
Harrisburg, PA 17101
rtribeck@barley.com
jtomevi@barley.com
(717) 852-4977
Attorneys for Defendant

Date: April 20, 2020