# TABLE OF CONTENTS

PAGES

I. INTRODUCTION .........................................................................2

II. STATEMENT OF FACTS ...........................................................2&3

III. QUESTIONS PRESENTED .........................................................4

  A. WHETHER ISSUES OF FACT EXIST BARRING SUMMARY.......
     JUDGMENT   BASED ON PLAINTIFF'S ALLEGED FAILURE TO
     NOTIFY DEFENDANT OF UNAUTHORIZED WITHDRAWALS
     WITHIN 60 DAYS OF OCCURRENCE?.................................................4

  B. WHETHER ISSUES OF FACT EXIST BARRING SUMMARY
     JUDGMENT   BASED ON PLAINTIFF'S ALLEGED FAILURE TO
     NOTIFY BBT OF UNAUTHORIZED WITHDRAWALS WITHIN 1
     YEAR OF OCCURRENCE?................................................................ 4

  C. WHETHER BANK BREACHED CUSTOMER/DEPOSIT
     AGREEMENT WITH PLAINTIFF?...................................................... 5

  D. WHETHER THE ISSUE OF A JOINT ACCOUNT WAS LITIGATED
     IN 2016 ORPHAN'S COURT TRIAL?................................................. 5

  E. WHETHER THE ISSUE OF PROMISSORY ESTOPPLE
     PRECLUDES PLAINTIFF FROM RELITIGATION JOINT
     ACCOUNT ISSUE?...................................................................... 5

  F.  WHETHER DEFENDANT VIOLATED THE STANDARD OF
    ORDINARY CARE PURSUANT TO PENNSYLVANIA UNIFORM
    COMMERCIAL CODE 13 PA.C.S.A. § 3103 AND 13 PA.C.S.A. § 3406?..5

  G.  WHETHER DEFENDANT FAILED TO FOLLOW BANK
    GUIDELINES DATED 2014 FOR ADDING PERSONS TO EXISTING
    ACCOUNTS?...............................................................................5

  H. WHETHER DEFENDANT'S PROCESS REGARDING OPENING A
    JOINT ACCOUNT EVOLVED BETWEEN JUNE 29, 2012 AND
    JANUARY 21, 2015?........................................................................5

IV.  STANDARD OF REVIEW…………………………………………..6

## V. ARGUMENT

**A. Plaintiff's Alleged Failure To Notify Defendant Of Unauthorized Withdrawals Within 60 Days Of Occurrence**………………………………..8

**B. Plaintiff's Alleged Failure To Notify Defendant Of Unauthorized Withdrawals Within 1 Year Of Occurrence**………………………………...8

**C. The issue of a joint account was not litigated in October 2016 Orphan Court Case No. 1515-1782 trial?**…………………………………………11&12

**D.  Plaintiff's evidence supports Defendant's breach customer/deposit agreement**………………………………………………………………12, 13 &14

**E.  Plaintiff has additional evidence to support a breach of contract claim by Defendant**………………………………………………………14, 15, & 16

**F.   Defendant violated the standard of ordinary care**…………16, 17,& 18

**G. Bank guidelines dated 2014 for adding persons to existing accounts not followed**……………………………………………………………………… 19

**H. Creating joint account evolved between June 29, 2012 and January 21, 2015**………………………………………………………………19, 20 & 21

**VI. CONCLUSION**……………………………………………………………

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGES**

*Anderson v. Liberty Lobby, Inc.,*

   477 U.S. 242, 247-248 (1986)…………………………………………..8

*Angelico v. Lehigh Valley Hospital, Inc.,*

   2005 WL 5163656 (Lehigh Co. Dec. 2005)……………………………12

*Allen v. Colautti,* 53 Pa. Commw.

   393, 417 A.2d 1303 (1980)…………………………………………………6

*Britamco Underwriters Inc. v. Weiner,*

   431 Pa.Super 276, 636 A.2d 649 (1994)…………………………………6

*Cooperstein v. Liberty Mutual,*

   416 Pa. Super 488, 611 A.2d 721 (1992)………………………………. 6

*Day v. Volkswagenwerk Aktiengesellschaft,*

   318 Pa. Super. 225, 464 A.2d 1313…………………………………….12

*Elder v. Nationwide Insurance Co.,*

   410 Pa.Super 290, 599 A.2d 996 (1991)……………………………….7

*Graf v. State Farm Insurance Co.,*

   352 Pa.Super 127, 507 A.2d 414 (1986)…………………………………16

*Horta v. Sullivan,*

   4 F.3d 2, 8 (1st Cir. 1993)…………………………………………..9

*Hudson v. Shoemaker,*

25 Phila. 54, 1992 WL 551115, 16 Pa. D. & C.4th 143 (Phila. Co. Oct. 21,

1992)……………………………………………………………………..12

*Hugh v. Butler County Family YMCA,*

418 F.3d 265,267 (3d Cir. 2005…………………………………………...7

*J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc*.,

792 a2d 1269 (Pa Super, 2002)………………………………………………8

*Middlesex United Presbyterian Church in the United States v. Middlesex Presbyterian Church,*

44 Pa. D. & C.3d 98, 1986 WL 20653, (Butler Co. Oct. 30, 1986)………..12

*Murphy v. Duquesne Univ. of the Holy Ghost,*

565 Pa. 571, 777 A.2d 418, 435 (2001)…………………………………….12

*Mylett v. Adamsky,*

139 Pa.Commw. 637, 591 A.2d 341 (1991)……………………………….6

*Office of Disciplinary Counsel v. Kiesewetter,*

585 Pa. 477, 889 A.2d 47 (2005)……………………………………………12

*Pollack v. City of Newark*,

147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d. Cir. 1956), cert.

denied, 355 U.S. 964 (1956……………………………………………….. 9

*Roland v. Kravco Inc.,*

 355 Pa. Super 493, 501, 513 A.2d 1029, 1034 (1986)……………….7

*Rutherfoord v. Presbyterian-University,*

 417 Pa.Super 316, 612 A.2d 500 (1992)………………………………6

*Schultz v. Connelly,*

 378 Pa.Super. 98, (1988)…………………………………………..12

 *William J. Heck Builders Inc. v. Martin,*

 315 Pa.Super 395, 462 A.2d 253 (1983)………………………………7

## Other Authorities

Federal Rules of Civil Procedure Rule 56(c)………………………………...8

Pennsylvania Uniform Commercial Code 13 Pa.C.S.A. § 3103…………….16

Pennsylvania Uniform Commercial Code 13 Pa.C.S.A § 3406…………17&18

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARBARA JOHNSON,

      Plaintiff,             CIVIL ACTION NO.: 2:17-CV-04490-JCJ

      V.

BRANCH BANKING AND
TRUST COMPANY,
SUCCESSOR BY MERGER TO
SUSQUEHANNA BANK,

      Defendant/Third-
      Party Plaintiff,

      V.

RICHARD A. JOHNSON, JR. and
VIRGINIA THOMAS

      Third-Party Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

NOW COMES Plaintiff Barbara Johnson, by and through her undersigned counsel and hereby files Plaintiff's Brief In Opposition to Defendant's Motion For Summary Judgement, stating as follows:

1

## I. INTRODUCTION

The issue in the current case before this Honorable Court is  where is Defendant's proof that a joint checking account existed between the three (3) Johnsons', Plaintiff Barbara Johnson, deceased husband Richard A. Johnson Sr., and stepson Richard A. Johnson Jr.,  between January 2015 and September 2015.

## II. STATEMENT OF THE FACTS

1. The facts relevant to this matter and supported by evidence and testimony introduced at trial in the Orphans Court matter are contained in Judge Tunnell's opinion, are categorized as follows:

   a) That Richard A. Johnson Jr. Deposited $509,110.00 in Decedent and Plaintiff's Susquehanna Bank/BB&T account. [DKT No. 77-Exhibit A]

   b) That Richard A. Johnson Jr. set aside in his personal account, $300,000.00 and an additional $18,000.00.  [DKT No. 77 Exhibit A]

   c) That most, if not all of the endorsed checks, did not contain the signature of Plaintiff. [DKT No. 77 Exhibit A].

   d) That Plaintiff never saw any of the checks issued by Lititz. [DKT No. 77 Exhibit A]

   e) That Richard A. Johnson Jr's testimony that he did not know who signed Plaintiffs check was not "credible". [DKT No. 77 Exhibit A]

2

    f) That Richard A. Johnson Jr. kept $300,000.00 for himself and failed to account for an additional $200,000.00. [DKT No. 77 Exhibit A].

2. On January 21, 2015 Plaintiff entered into a bilateral contract with Defendant to open a checking account for sole purpose of depositing insurance proceeds resulting from a fire at her residence on New Year's Eve of 2014. **[DKT No. 77 Exhibit B].**

3. Therefore, at the time Plaintiff opened her account on January 21, 2015, she was an individual account holder/owner under customer/deposit agreement. [DKT No. 77-Exhibit B]

4. As an existing account holder, Defendant needed Plaintiff's consent/authorization as a condition precedent, before Defendant could add anyone to Plaintiff's existing checking account. (See **EXHIBIT-A - BB&T/Susquanna Procedure dated 2014 for Adding Person to Existing Account).**

However, without Plaintiff's consent/authorization:

(a). Defendant placed two unauthorized users on Plaintiff's personal checking account i.e., Richard A. Johnson, Sr., and her stepson Richard A. Johnson, Jr.  [DKT No. 77 Exhibit D]

(b).  Defendant created a joint checking account with Plaintiff's late husband Richard A. Johnson, Sr., and her stepson Richard A. Johnson, Jr. when both were added to her individual checking account; [DKT No. 77 Exhibit D]

(c). Defendant allowed non-account holder Richard A. Johnson, Jr., to deposit fraudulently endorsed insurance proceed checks made payable to Plaintiff and her now deceased husband into Plaintiff's personal checking account; [DKT No. 77 Exhibit A].

(d). Defendant allowed Richard A. Johnson, Jr., a non-account holder to change the address for mailing the monthly bank statements on Plaintiff's checking account from 321 Pemberton Road Kennett Square, Pennsylvania to his personal home address at 519 School House Road Kennett Square, Pennsylvania. [DKT No. 77 Exhibit E]

(e) Defendant allowed non-account holder Richard A. Johnson, Jr., to withdraw the insurance proceeds checks totaling $509,110.03 from Plaintiff's checking account;

(f) Defendant's breached of customer/deposit agreements resulted Plaintiff suffering damages in the amount of $509,110.03, attorney fees, pre-judgment and post-judgment interest and emotional distress. [DKT No. 77 Exhibit C]

## III. QUESTIONS PRESENTED

**A. WHETHER ISSUES OF FACT EXIST BARRING SUMMARY JUDGMENT BASED ON PLAINTIFF'S ALLEGED FAILURE TO NOTIFY DEFENDANT OF UNAUTHORIZED WITHDRAWALS WITHIN 60 DAYS OF OCCURRENCE?**

**ANSWERS: YES.**

**B. WHETHER ISSUES OF FACT EXIST BARRING SUMMARY JUDGMENT BASED ON PLAINTIFF'S ALLEGED FAILURE TO NOTIFY BBT OF UNAUTHORIZED WITHDRAWALS WITHIN 1 YEAR OF OCCURRENCE?**

4

ANSWERS: YES.

**C.   WHETHER   BANK   BREACHED   CUSTOMER/DEPOSIT AGREEMENT WITH PLAINTIFF?**

**ANSWER: YES.**

**D. WHETHER THE ISSUE OF A JOINT ACCOUNT  WAS LITIGATED IN 2016 ORPHAN'S COURT TRIAL?**

**ANSWER: NO.**

**E. WHETHER THE ISSUE OF PROMISSORY ESTOPPLE PRECLUDES PLAINTIFF FROM RELITIGATION JOINT ACCOUNT ISSUE?**

**ANSWER: NO.**

**F.  WHETHER DEFENDANT VIOLATED THE STANDARD OF ORDINARY CARE PURSUANT TO  PENNSYLVANIA UNIFORM COMMERCIAL CODE 13 PA.C.S.A. § 3103 AND 13 PA.C.S.A. § 3406?**

**ANSWER: YES.**

**G.  WHETHER DEFENDANT DEFENDANT FAILED TO FOLLOW BANK GUIDELINES DATED 2014 FOR ADDING PERSONS TO EXISTING ACCOUNTS?**

**ANSWER: YES.**

**H. WHETHER DEFENDANT'S PROCESS  REGARDING OPENING A JOINT ACCOUNT EVOLVED BETWEEN JUNE 29, 2012 AND JANUARY 21, 2015?**

**ANSWER: YES.**

5

## IV. STANDARD OF REVIEW

Summary judgment is to be entered only in those cases that are clear and free from doubt, where the uncontroverted allegations of the pleadings and the other permissible material filed in support of and in opposition to the motion reveal that there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. *Cooperstein v. Liberty Mutual,* 416 Pa. Super 488, 611 A.2d 721 (1992).

The burden rests upon the moving party to demonstrate clearly that there is no genuine issue of material fact. In determining whether there is a dispute of material fact, the court must take the view of the evidence most favorable to the non-moving party and give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Graf v. State Farm Insurance Co.,* 352 Pa.Super 127, 507 A.2d 414 (1986). A fact is material if it directly affects the disposition of a case. *Allen v. Colautti,* 53 Pa. Commw. 393, 417 A.2d 1303 (1980).

Summary judgment may be granted only where the right is clear and free from doubt. *Britamco Underwriters Inc. v. Weiner,* 431 Pa.Super 276, 636 A.2d 649 (1994). The court's responsibility is merely to determine whether such an issue of material fact exists; the court does not resolve the issue on its merits. *Rutherfoord v. Presbyterian-University,* 417 Pa.Super 316, 612 A.2d 500 (1992); only whether there are issues of fact to be tried. *Mylett v. Adamsky,* 139 Pa.Commw. 637, 591 A.2d 341 (1991).

The function of a summary judgment is to avoid a useless trial. *William J. Heck Builders Inc. v. Martin,* 315 Pa.Super 395, 462 A.2d 253 (1983). The purpose of the rule is to allow the moving party to disclose the facts of his claim or defense. *Elder v. Nationwide Insurance Co.,* 410 Pa.Super 290, 599 A.2d 996 (1991). " Our rules of civil procedure are designed to eliminate the poker game aspect of litigation and compel the players to put their cards face up on the table before the trial begins." *Roland v. Kravco Inc.,* 355 Pa. Super 493, 501, 513 A.2d 1029, 1034 (1986).

Plaintiff's facts are uncontroverted and therefore must be accepted as true and valid as pled. Defendant has presented no evidence, no depositions, no interrogatories, no admissions, nothing to raise a genuine issue of material fact for a jury to decide regarding the existence of a joint checking agreement between Plaintiff Barbara Johnson, Richard Senior and Richard Junior).

For the reasons set forth below, and viewing the evidence in the light most favorable to Defendant, *see Hugh v. Butler County Family YMCA,* 418 F.3d 265,267 (3d Cir. 2005), there is no genuine issue as to any material fact, and Plaintiff is entitled to judgment as a matter of law.

The Bank is liable to Plaintiff for the wrongful actions of <u>two   non-account holders</u> when without consent or authorization the Bank unilaterally added both to

Plaintiff's individual checking account holding her insurance proceeds. Plaintiff is entitled to summary judgment as a matter of law.

There are three major elements required for a breach of contract action in Pennsylvania, a valid enforceable contract must exist; there must be a breach of a duty imposed by that contract; and this breach results in damages. *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*,792 a2d 1269 (Pa Super, 2002).

## V. ARGUMENT

A. Plaintiff's Alleged Failure To Notify Defendant Of Unauthorized Withdrawals Within 60 Days Of Occurrence; and,

B. Plaintiff's Alleged Failure To Notify Defendant Of Unauthorized Withdrawals Within 1 Year Of Occurrence.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV. P. 56(c). A motion for summary judgment will be defeated when there [are] genuine issues of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the

evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249.

The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d. Cir. 1956), cert. denied, 355 U.S. 964 (1956) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence.")

It is undisputed that monthly bank on 3114 account was mailed to 317 Pemberton Road, Kennett Square after the fire because Plaintiff's home was completely destroyed by fire. During that time the Pemberton address was only being utilized to receiver Plaintiff's mail. The mailbox on 317 Pemberton road was not accessible by Plaintiff. During her deposition she testified that it was about four (4) miles from where she was temporarily living with her daughter. Johnson Junior retrieved all the mail including the Defendant's bank statements. Nothing of current record shows that Johnson Junior shared those statements with Plaintiff, since their relationship was caustic.

In May 2015, Junior, without Plaintiff's knowledge or consent, changed the address on Plaintiff's 3114 account to his personal residence, 519 School House Road

where resides with his aunt. The record verifies that this change of address occurred concurrently with him withdrawing $100,000 in a cashier's check with BB&T Bank Manager's Wendy Petrondi's signature drawn from 3114 account. Again, Junior did not provide Defendant bank statements to Plaintiffs because he did not want her to know that he was withdrawing funds from her account.

In her amended complaint, in her deposition testimony, and her affidavit, Plaintiff, an 80-year-old woman, has consistently testified that she did not discover Johnson Junior's theft until after her husband died in September of 2015. At her husband's death Junior had emptied the account of over $500,000 dollars in July of 2015. When Plaintiff found out from Bank that her account had been depleted, she immediately retained counsel and filed a claim in Orphans Court.

Accordingly, there are numerous genuine issues of material facts barring Summary Judgment as follows:

1. Did Plaintiff know that Johnson Junior had been given access to her account by BB&T?

2. Can Defendant provide a signature card or signed account agreement adding Junior/Senior Johnsons to the account 3114?

3. Did Johnson Junior conceal status of the bank account by changing address at withdrawing $100,000 so that he could control and deplete Plaintiff's account?

10

4. Did Johnson Junior change the account from Pemberton to his home address at 519 School House Road without Plaintiff's knowledge?

5. Did Plaintiff act promptly and appropriately when she was informed by Defendant of the depleted status of her account 3114?

6. Did BB&T initiate an investigation (as their policies require) once they learned from Plaintiff that she did not give access to 3114 to Johnson Junior and was unaware that funds were being withdrawn by him from her account?

The above issues are clearly factual issue that have to be resolved by a trier of facts.

C. The issue of a joint account was not litigated in October 2016 Orphan Court Case No. 1515-1782 trial? (See **EXHIBIT- B TRANSCRIPT).**

On November 7, 2019, Plaintiff sent all Counsels copies of Case No. 1515-1782 transcripts. (See Exhibit E - email dated Nov 7, 2019) The subject matter of the case 1515-1782 was "Petition to Remove Executor and Surcharge". A review of the two-day trial transcript provides **no** evidence supporting Defendant allegation that a joint account ever existed with all three (3) Johnsons' names. The joint account was not a claim in the case. **(See EXHIBIT C- Orphan Court's Petition ).**

While Defendant has known this fact since 2019, Defendant continues to assert that Plaintiff should be estopped from relitigating the joint account issue while knowing facts contrary to Defendant's assertion.

Collateral estoppel in the form of issue preclusion that bars relitigation of an issue if the precise issue has been decided in an earlier adjudication by a final judgment on

11

the merits; the party against whom the doctrine is asserted was a party, or is in privity with a party, to the prior proceeding; and the party against whom it is asserted has had a full and fair opportunity to litigate the particular issue in the prior proceeding. *Angelico v. Lehigh Valley Hospital, Inc.,* 2005 WL 5163656 (Lehigh Co. Dec. 2005) (citing *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 435 (2001)); *Schultz v. Connelly,* 378 Pa.Super. 98,   (1988); *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 464 A.2d 1313, 1319 (Pa. Super. 1983) (internal citations omitted); *Hudson v. Shoemaker,* 25 Phila. 54, 1992 WL 551115, 16 Pa. D. & C.4th 143 (Phila. Co. Oct. 21, 1992); *Middlesex United Presbyterian Church in the United States v. Middlesex Presbyterian Church,* 44 Pa. D. & C.3d 98, 1986 WL 20653, (Butler Co. Oct. 30, 1986); *Office of Disciplinary Counsel v. Kiesewetter,* 585 Pa. 477, 889 A.2d 47 (2005).

Therefore, in October 2016 Orphan Court Case No. 1515-1782, the precise issue of a joint account existing between all three (3) Johnsons, i.e., Plaintiff, Johnson, Jr. and Johnson, Sr., Johnsons was not litigated in the Orphan Court Case.

D.  Plaintiff's evidence supports Defendant's breach customer/deposit agreement.

Under the terms and conditions of deposit agreement Plaintiff signed on January 21, 2015,… "if you sign the signature card or open or continued to use the account you agree to these rules". [Dkt. No. 77 - Exhibit B].

12

Further, under the terms and conditions of deposit agreement, Bank defines "you" "means the account holder(s) and anyone else with the authority to deposit withdraw or exercise control over the funds in the account". [Dkt. No. 77 Exhibit B].

Plaintiff did not authorize either Richard Junior nor Richard Senior to deposit, withdraw or exercise control over her individual account. [ DKT No. 77 Exhibit-F]

The bank breached the terms and conditions of the deposit agreement with Plaintiff.  On January 21, 2015 when Plaintiff opened her account, she was an individual account holder which is defined as …"an account in the name of one person." [DKT No. 77 Exhibit B-]

Also, on January 21, 2015, the Bank breached the terms and conditions of the deposit agreement with Plaintiff, when Plaintiff opened her account, Plaintiff was… "a single individual is the owner".  [DKT No. 77 Exhibit B]    When the Bank added Richard Johnson Jr. and Richard Johnson, Sr., to Plaintiff's individual/single owned account, said account was transformed into a joint account.  Such was never intended by Plaintiff. [DKT No. 77 Exhibit F]

During questioning of Wendy Petrondi during her deposition regarding how the Bank put/add names on the Bank Monthly Statement she stated... "the three of them opened this account together". [DKT No. 77 Exhibit G ]

13

Not only did the three Johnsons' never  "opened this account together" the discovery record  substantiates the fact that Defendant has <u>never</u> produced any evidence of a joint account signature, customer agreement, deposit agreement in the name of the three (3) Johnsons and dated January 21, 2015.

<u>E.  Plaintiff has additional evidence to support a breach of contract claim by Defendant.</u>

The method for creating an account holder begins with signing signature card/ customer agreement.  In the <u>second paragraph</u> of Customer Agreement signed by Plaintiff on January 21, 2015 it states…(sic) "By signing this  Agreement ,  you  are establishing a relationship  with  us.  You may from time to  time  select  accounts  and services under this  Agreement.  In  connection with those  accounts  and  services, you may open deposit accounts or obtain services, you may then <u>make deposits, withdrawal</u> or transfer all or any portion of the balance of your account, <u>change account information</u> or close your accounts or services." <u>[DKT No. 77 Exhibit B]</u>

When Plaintiff signed Customer Agreement on January 21, 2015 she signed as an individual account holder i.e., "an account in the name of one person" as defined in "Deposit  Agreement  Ownership  Provision"  (See Column  4-(bottom)  &  Column  5 entitled…"Individual Account" . The signature card/customer agreement is in one name

and has only one signature, Barbara Johnson, no Johnson Jr., nor Johnson, Sr. [Dkt No. 77 Exhibit B]

During Bank Manager Wendy Petrondi's deposition testimony she testified that to become an "account holder", the signature card/customer agreement must be signed. [Dkt. No. 77-Exhibit H].  Wendy Petrondi also defined an "account holder" as one who can make deposits, withdrawals and changes the address on the account [Dkt. No. 77 - Exhibit I]   Therefore, absent a signature card having all three Johnsons' names listed on it, Defendant Susquehanna Bank/BB&T, breached the terms and conditions provided **only** to an "account holder(s)"  i.e., : **"(a) WITHDRAWLS, (b) STATEMENTS and (c) CHANGE OF ADDRESS".**

(a). **"WITHDRAWALS"** That the account holder, who signed to open the account, is the authorized to make withdrawals. [DKT No. 77 Exhibit B]

"Generally- Unless clearly indicated otherwise **on the account records, any of you, acting alone, who signs to open the account** or **has authority to make withdrawals**or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us". [DKT No. 77 EXHIBIT B- Column 3 under heading entitled" Withdrawals"].

15

(b). That the **"CHANGE OF ADDRESS"** provision of the Deposit Agreement signed by Plaintiff, mandates two conditions precedent for executing a **"change of address ...."** **must be made in writing** by **an account holder"** ... a **writing** authorizing him to change the address as an "account holder". [Dkt No. 77 Exhibit B-Column 12 entitled…"Address or Name Changes"]

(c). That the **"STATEMENTS"** provision of the deposit Agreement signed by Plaintiff and wherein the address for mailing Plaintiffs monthly bank statements without having such authorization as ... **an account holder** to do so. More importantly, Bank had no writing supporting said change of address for the monthly bank statements of Plaintiff. [Dkt. No. 77 - Exhibit B- Deposit   Agreement   - Column 12 under heading entitled…"Address or Name Changes"].


F.   Defendant violated the standard of ordinary care under Pennsylvania UCC.

As a banking customer, Defendant owed Plaintiff a duty of ordinary care as defined under Pennsylvania Uniform Commercial Code 13 Pa.C.S.A. § 3103, Definitions and index of definitions is the following definition of Ordinary Care:

"In the case of a person engaged in business, means observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged.   In the case of a bank that takes an

instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument <u>if the failure to examine does not violate the bank's prescribed procedures</u> and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this division or Division 4 (relating to bank deposits and collections)."

As a banking customer, Defendant owed Plaintiff a duty of ordinary care as defined by  13 Pa.C.S.A § 3406, which states, in pertinent part: "If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss"?

Defendant violated that duty of ordinary care and failed to observe reasonable bank procedures in the following instances (a).  Defendant <u>placed two unauthorized users</u> on Plaintiff's personal checking account i.e., Richard A. Johnson, Sr., and her stepson Richard A. Johnson, Jr; (b) <u>created a joint checking account</u> with Plaintiff's late husband Richard A. Johnson, Sr., and her stepson Richard A. Johnson, Jr.;    (c). allowed non-account holder Richard A. Johnson, Jr., <u>to deposit fraudulently endorsed insurance procced checks</u> made payable to Plaintiff and her now deceased husband into

17

Plaintiff's personal checking account; allowed Richard A. Johnson, Jr., a non-account holder to change the address for mailing the monthly bank statements on Plaintiff's checking account from 321 Pemberton Road Kennett Square, Pennsylvania to his personal home address at 519 School House Road Kennett Square, Pennsylvania; and, (e). allowed non-account holder Richard A. Johnson, Jr., to withdraw the insurance proceeds checks totaling $509,110.03 from Plaintiff's checking account.

As a banking customer, Defendant owed Plaintiff a duty of ordinary care as defined by 13 Pa.C.S.A § 3406, which states, in pertinent part:… "If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss"?

Banks duty of care to Plaintiff under UCC of Pennsylvania was breached when Bank allowed Johnson, Jr., to deposit fraudulently endorsed proceeds checks in her name into account 3114.

18

G. Bank guidelines dated 2014 for adding persons to existing accounts

Defendant failed to adhere to Banks Internal Susquehanna Bank ( 2014 Internal Policy/Guidelines– Adding Names/Signers To Existing Personal Accounts**). (SEE Exhibit A- Adding Names/Signers To Existing Personal Accounts** )

(sic)…"Existing customers may request to have additional signers added to their account(s). Both the existing customer(s) and the person being added must be present".

(sic)…"Ask the existing account owner(s) to sign the Acknowledgement of Account Owner(s) form".

Plaintiff was never contacted, nor involve in process, nor signed any acknowledgement form adding either Johnson Jr., and/or Johnson, Sr. to her account 3114.

H. Creating Joint Account Has Evolved Between June 29, 2012 and January 21, 2015.

Defendant asserts that its customer agreements in prior instances are "universal" account agreement that authorized the Bank to add of Johnson, Jr., and Johnson, Sr. to Plaintiff's checking account 3114.

This statement is inconsistent with evidence of record which shows past conduct as to how Defendant created a joint account three(3) years earlier.  For example the

19

record shows that on June 29, 2012 both Plaintiff and her now deceased husband Richard Sr., signed/dated a customer agreement and created a joint account. There was no joint account created in with Johnson Sr., or Johnson Junior on January 21, 2015.

Plaintiff was the only signature on the account dated January 21, 2015 until Defendant unilaterally added Johnson Sr. and Jr., both, without customer agreements were added to February 2015 monthly bank statement (See **EXHIBIT-D Plaintiff and deceased husband Customer Agreements dated June 29, 2012)**.

As the record shows in 2012, the requirements to open joint account seemed to have evolved from having all parties present, have all sign/date customer agreement account to opened joint account to Defendant adding parties without all present .

During questioning of Wendy Petrondi, BB&T Bank Manager, at her deposition regarding "how the Bank put/add names of Johnson Jr., and Johnson, Sr. on Plaintiff's February 17, 2015 Monthly Bank Statement" she stated... "the three of them opened this account together". The Bank manager's statement is also consistent with the Bank policy and guidelines of 2014 regarding adding person to an existing …"the person being added must be present" (emphasis added)

However, Defendant has produced no evidence i.e., customer agreements having all three (3) Johnsons i.e., Plaintiff, Johnson Sr., and Johnson Jr, present when Plaintiff opened her account to deposit the insurance proceeds on January 21, 2015.

WHEREFORE, Plaintiff hereby request this Honorable Court to enter Summary Judgement in favor of Plaintiff and against Defendant.


s/Marvin J. Powell, Esquire
POWELL LAW ASSOCIATES, LLC
PA. ID No. 38129
234 Kennedy Drive
South Coatesville 19320-3969
(610) 489-1714(office)
Email:powelllawassociates@fast.net
Attorney for Plaintiff, Barbara Johnson

Date: April 27, 2020

21

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BARBARA JOHNSON,

       Plaintiff,               CIVIL ACTION NO.: 2:17-CV-04490-JCJ

    V.

BRANCH BANKING AND
TRUST COMPANY,
SUCCESSOR BY MERGER
TO SUSQUEHANNA BANK,

       Defendant/Third
       -Party Plaintiff,

    V.

RICHARD A. JOHNSON, JR.
and VIRGINIA THOMAS

       Third-Party Defendants.

## **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2020, a true and correct copy of Plaintiff's Brief In Opposition To Defendant's Motion For Summary Judgement was served by electronic e-mail on the following:

Eugene A. Steger, Jr., Esquire
Eugene Steger & Associates PC
411 Old Baltimore Pike
Chadds Ford, PA 19317
esteger@stegerlaw.net
*Attorney for Third-Party Defendants*


Justin Tomevi, Esquire
Barley Snyder
100 East Market Street
York, PA 17401
jtomevi@barley.com
(717) 231-6603
*Attorneys for Defendant*
*BB&T Corporation*

s/Marvin J. Powell, Esquire
POWELL LAW ASSOCIATES, LLC
PA. ID No. 38129
234 Kennedy Drive
South Coatesville 19320-3969
(610) 489-1714(office)
Email:powelllawassociates@fast.net
Attorney for Plaintiff, Barbara Johnson

Date: April 27, 2020